IN THE MATTER OF WILLIAM WALSH ON HABEAS CORPUS.

*State prison—Misconduct of convict—Forfeiture of good time.*

1. How. Stat. §§ 9703, 9704, governing debits and credits for good conduct or misconduct of convicts in the State prison, are held to contemplate:

   *a*—That the rules in reference to the forfeiture of good time shall be plain, certain, and specific, and known to the inmates of the prison, and be adopted by the board of inspectors, and be of record.

   *b*—That each convict's record as to loss of good time, and for what reason he has lost it, shall be made known to him monthly.

   *c*—That the reports of the infractions of the rules shall be investigated each month at the regular meeting of the inspectors, and passed upon by them, and that a record shall be made of their action, so that the amount of lost time to be deducted from a convict's good time shall not rest upon any computation of the warden's clerk, but may be shown at once from the inspector's records; and the convict who is reported by the officers should be given, if he desires, an opportunity to be heard upon such reports.

*Habeas corpus.* Submitted June 30, 1891. Prisoner remanded June 30, 1891, and opinion filed July 28, 1891.

*Charles A. Blair*, for petitioner.

*A. A. Ellis*, Attorney General, for the people.

MORSE, J. William Walsh, who was confined in the State prison at Jackson, applied by his counsel, Charles A. Blair, to this Court, June 29, 1891, for the writ of *habeas corpus*. The writ was granted, and a hearing had upon the petition and return of the warden on June 30, 1891, when he was remanded back into the custody of the warden of said State prison, with the intimation that his time of imprisonment would expire July 12, 1891, at noon, if nothing growing out of his own conduct intervened before that time. It appears that Walsh was sentenced to such prison, October 3, 1885, for the term of seven years, and it is conceded that, if had not lost any of the good time given to him by the statutes of this State, his term would have expired March 21, 1891. But it was claimed by the warden that, by reason of infractions of the prison rules, his good time had been so reduced that his term would not expire for some time. The statutes provide as follows:

"SEC. 9703. The board of inspectors may establish a proper scale or rate of debits and credits for good conduct or misconduct, which shall be a part of the rules of discipline of the prison, and in a book to be kept for that purpose may cause to be entered up, at the end of each month, the total of credits to which each prisoner may be entitled; and they shall require the warden, on the first day of each month, by means of cards or otherwise, to announce such result to each prisoner.

"SEC. 9704. The warden shall keep a record of each and all infractions of rules of discipline by convicts, with the names of the persons offending, and the date and character of each offense, which record shall be placed before the managers at each regular meeting of the board; and every inmate who shall have no infraction of the rules of the prison or laws of the State recorded against him shall be entitled to a deduction for each year of his sentence, and *pro rata* for each part of a year, when the

sentence is for more or less than one year, as follows:
From and including the first year, up to the third year,
a deduction of two months for each year; from and
including the third year, up to the fifth, a reduction of
75 days for each year; from and including the fifth up
to the seventh year, a deduction of three months for
each year; from and including the seventh year, up to
the tenth year, a deduction of 105 days for each year;
from and including the tenth year, up to the fifteenth
year, a deduction of four months for each year; from and
including the fifteenth year, up to the twentieth year, a
deduction of five months for each year; from and includ-
ing the twentieth year, up to the period fixed for the
expiration of the sentence, six months for each year.
The inspectors shall provide by rule how much of the
good time thus earned a convict shall forfeit for one or
more violations of the prison rules. The warden, in
computing the diminution of time for those now in the
prison, shall allow them for the good time made up to
the time this act takes effect, in accordance with the
provisions of law previously in force, and thereafter it
shall be computed in accordance with the terms of this
section. Whenever a convict has been committed under
several convictions, with separate sentences, they shall be
construed as one continuous sentence in the granting or
forfeiting good time."

This section, as it now stands, was enacted in 1877.
This practice of permitting the convicts to earn good
time by good conduct has been incorporated in our stat-
utes since 1857. Its apparent object is to stimulate the
prisoners to good behavior by the hope of reward in the
shortening of their terms of confinement. To obtain
this end, it is wisely provided that the convict shall
know what the rules of prison discipline are; what the
penalty of his infraction of any rules will be; and that
he shall be acquainted at the end of each month with
his standing as to good time. It will also be noticed
that he earns the good time provided for in the statute,
unless the board of managers forfeit the whole or a part
of it for breaches of the discipline of the prison. And

it is evidently intended that such forfeiture shall not rest in the caprice or favoritism of the board in each particular case, but shall depend upon fixed and regular rules, applying to all alike, which shall be adopted by the board, and promulgated so as to be known and understood by the prisoners. The practice at the State prison at Jackson has not been in conformity with the spirit or letter of the statute.

The application of William Walsh for the writ of *habeas corpus* was first made to Hon. Erastus Peck, circuit judge of the circuit court for the county of Jackson, who, upon the hearing of the writ, refused to release the petitioner, and advised, because of the importance of the questions raised, that he apply to this Court for the writ. By agreement, and to expedite the hearing before us, a copy of the testimony taken before Judge Peck was presented to this Court. The facts in Walsh's case show that April 7, 1885, the board of inspectors of the prison adopted the following rules:

"Rule 1. Any convict who shall violate the rules of the prison shall lose a portion of good time for each offense; and, if two or more offenses shall be committed in one month, he shall lose time for each offense, the same as though they were committed in different months.

"Rule 2. Any convict who shall assault a keeper with intent to do him serious bodily harm shall, in the discretion of the board of inspectors, forfeit all the good time that he may have earned up to the date of his offense.

"Rule 3. Any convict who shall escape from the prison, or attempt or conspire with others to escape, or shall be found with tools or weapons to be used in escaping or attacking officers, shall, in the discretion of the board of inspectors, forfeit all the good time earned up to the date of the offense."

These are all the rules to be found on the subject adopted by the inspectors, and now in force in said prison. There is not any written rules stating what the forfeiture

will be for any infraction of the rules, excepting for assault of a keeper with intent to do serious bodily harm, escaping or attempting to escape from the prison, or having tools or weapons in possession for the purpose of use in escape or assault, and these rest in the discretion of the inspectors. There is no written certain standard of the number of days that will be lost from the good time by the infraction of any rule of the prison, as was evidently intended by the statute. But a practice has grown up in the prison of taking for each offense, however trivial or heinous, the same number of days from the convict's good time, to wit, as many days as he would earn in a month if he lost no good time, by an obedience to the rules. When this practice originated, or who authorized it, is not definitely shown by the testimony, but it has existed for a long time, and the present warden and officers have followed it since their incumbency, commencing in January of this year.

The manner of keeping the record of the infractions, and the consequent forfeitures, is as follows: In a book, called the "Warden's Daily Journal," there is entered the reports of the keepers and other officers of the prison of infractions of the rules by the various convicts. The reports are made by these officers to the warden, and filed by him, and the substance of such reports entered by his clerk in the journal. Sometimes the entries are not made of the same date as the report, or in consecutive order, which fact occasioned some trouble in determining the exact *status* of Walsh's forfeitures in the present case. When the inspectors meet, their action seems to consist in approving the reports, by signing their names in the journal. It does not appear that the prisoners are notified each month, if at all, of their standing as to lost time or good time, except the clerk testifies that, if they ask for it, "we will figure up his time, and show him

when his good time expires, counting the reports that are against him." This is done by the warden's clerk, and the computations are not presented to the board of inspectors, nor are the computations made monthly, as they should be. Under this loose system, the board of inspectors know but little, if anything, of any man's standing as to lost time or forfeitures, and the computations of the clerk are not infallible, as was shown in the present case. It would seem that the keepers and the warden's clerk are really the persons who, under the practice grown up in this prison, fix the forfeitures of the convicts of their good time. The keeper reports an infraction of the rule, and the clerk files it away, and enters the substance of it in the daily journal, as, for instance:

"Nov. 17, 1890. Number 3,628. (Walsh.) Reported by Keeper Skinner for talking to men locking near him in the east end."

When the clerk of the prison, Charles F. Knapp, was sworn in the proceedings before Judge Peck, he had a card upon which the lost time of Walsh had been computed by the warden's clerk, showing two reports the first two years, 5 days each; one the third year, 6 days; five the fifth year, $7\frac{1}{2}$ days each; and eight the sixth year, $7\frac{1}{2}$ days each; in all $113\frac{1}{2}$ days. Knapp was unable to find three of the reports entered on the daily journal, and concluded that, under the practice of the prison, they ought not to be charged against the prisoner, because they had not been approved by the signatures of the prison inspectors in the journal; but, on examination of the journal by this Court, we found the entries, but under other dates. The book showed that January 15, 1891, there was a report entered in the journal against Walsh and three others for attempting to escape from

the prison. At the time of the hearing before Judge Peck, the board of inspectors had not passed upon this attempt to escape, except by signing the journal as before stated, in which the fact of the report being made was entered; but under the practice in vogue he lost no more good time than he did for "making a pipe in his cell," or talking with another convict without permission; and in the computation of the clerk, presented to us, and made out in conformity with this custom, he is charged with 7½ days of lost time, it being in the sixth year of his confinement, and 7½ days being the amount of good time he would earn each month that year under the law. But after the hearing before the Jackson circuit judge, and before the application to this Court, two of the three inspectors of the prison met at a special meeting, June 22, 1891,—how called, it does not appear, or whether the other member of the board had notice of it,—and passed a resolution forfeiting all the good time earned by Walsh up to January 15, 1891, because of his attempted escape at that date.

Considering that this irregular practice of forfeiting good time had existed in the State prison, as shown by the testimony, for at least 20 years, we are inclined to hold it, as far as those now confined in the prison are concerned, of the same efficacy as a written rule; and for each infraction of a prison rule, no matter what its import, whether a trivial or serious breach of discipline, the board of inspectors, the governing power of the prison, have ordained that the prisoner shall lose as many days of his good time as he would be earning under the law each month in the year of such infraction. This would deduct from Walsh's good time 113½ days, and release him from confinement on the 12th day of July, 1891, at noon, as we intimated in our oral decision.

The action of the two members of the board must be treated as of no force or effect. We have held this unwritten rule or custom binding on the prisoners, and it must also be held binding upon the board of inspectors, until new rules are adopted, at a regular meeting of such board, and promulgated to the inmates of the prison. It is held valid because it has existed so long that it must be presumed to be known and understood by all within the prison walls. Under this unwritten rule, or rather custom, Walsh has had his lost time for attempting to escape once fixed and deducted from his good time. This custom cannot be thus set aside in his particular case. It would look, without explanation, as if this action were taken in view of Walsh's application for this writ, as nearly six months had elapsed from the commission of the offense before any action was taken, other than the observance of the usual custom in such cases.

We are led by the facts in this case to suggest to the managers of this prison the speedy abolishment of this custom, which has no foundation in the law, nor any equity or justice in it, and which is in evident conflict with the plain purposes of the statute. The law clearly contemplates—

1. That the rules in reference to the forfeiture of good time shall be plain, certain, and specific, and known to the inmates of the prison.

2. That they shall be adopted by the board of inspectors, and be of record.

3. That each convict's record as to loss of good time, and for what reason he has lost it, shall be made known to him monthly.

4. That the reports of the infractions of the rules shall be investigated each month at the regular meeting of the inspectors, and passed upon by them, and that a record shall be made of such action, so that the amount of lost time to be deducted from a convict's good time shall not rest upon the computation of the warden's

clerk, but may be shown at once from the inspectors' records. In justice, also, to the convict who is reported by the officers, who are human, and liable to err, he should be given, if he desires, an opportunity to be heard upon such reports.

Under the statutes, the warden is required "to read to the convicts, at least once in each month, the rules and regulations of the prison, so far as the same relate to such convicts." How. Stat. § 9686, subdiv. 8. These rules and regulations must be hung up in each cell in a conspicuous place, and they must be printed or written in a language known to the convict occupying the cell. Id. § 9680.

If the law is properly complied with, there will be no occasion for any *habeas corpus* proceedings to determine when a convict shall be released on account of his good time. Each prisoner will know and understand just what each infraction of the rules will cost him in forfeiture of such good time. If he is reported, he may have a hearing before the governing board of the prison. They will investigate and pass upon the reports against him, and their determination will be a matter of record; and, at the end of each month, he will be made acquainted with his exact standing as to loss of good time, about which there can be no mistake or dispute. If this had been done in the present case, there would have been, in all probability, no case here before us, or, if there had been, there would have been no difficulty in at once determining from the records the exact day that Walsh was entitled to deliverance. As it is, it was quite uncertain, until this Court laboriously examined the warden's journal, just how many days of his good time Walsh had lost under the custom in vogue at the prison.

It also appears from the record that, when the counsel for Walsh first applied to ascertain his standing as to

good time, the warden's clerk furnished him with a card, which showed his total lost time to be ten months and twenty days, and in which he was charged, "Dec. 9, / 90, att. escape,—7—30" the "7—30" being figured in the total as 7 months and 30 days. When the present clerk of the prison, Mr. Knapp, testifies on the hearing before Judge Peck, he brings in the other card, which shows the lost time to be only 113½ days; and he says that the first card was filled out by Mr. Avery, the clerk who preceded him, and that it is a mere memorandum, and not correct. Such loose practice as this puts the convict, without resort to the courts, as far as his good time is concerned, at the mercy of the mistakes of clerks, whose business under the law is not to compute the lost time of the prisoners upon some custom or usage, but to record the acts of the board of inspectors, and to obtain the standing of the convicts as to good time from the records of such board. Most manifestly the board of inspectors have not performed their duties in this respect under the law. Their failure to do so has made business for the courts and expense to the State, and is an injustice to those confined in the prison, who, although convicts, are yet entitled to the rights which the law plainly and expressly gives them as such convicts.

The other Justices concurred.