## The People v. Daniel Cummings.

*Constitutional law—Indeterminate sentences.*

Act No. 228, Laws of 1889 (3 How. Stat. §§ 9613b–9613g), providing for indeterminate sentences, and the disposition, management, and release of criminals under such sentence, is unconstitutional.

Error to Muskegon.  (Dickerman, J.)  Argued May 6, 1891.  Decided November 13, 1891.

Respondent was convicted of larceny, and sentenced under Act No. 228, Laws of 1889, to the State House of Correction and Reformatory, at Ionia, not less than two, nor more than four, years.  Sentence vacated for all over two years.  The facts are stated in the opinion.

*James E. McBride,* for respondent.

*A. A. Ellis,* Attorney General, and *Willard J. Turner,* Prosecuting Attorney, for the people.

MORSE, J.  This case involves the constitutionality of

Act No. 228, Laws of 1889. The act, in full, is as follows:

"An Act to provide for indeterminate sentences, and disposition, management, and release of criminals under such sentence.

"SECTION 1. *The People of the State of Michigan enact*, That every sentence to State Prison at Jackson, the State House of Correction and Reformatory at Ionia, and the State House of Correction and Branch of the State Prison in the Upper Peninsula, of any person hereafter convicted of a crime, except of a person sentenced for life, or a child under fifteen years of age, may be, in the discretion of the court, a general sentence of imprisonment in that one of the prisons provided by law for the offense of which he is convicted. The term of such imprisonment of any person so convicted and sentenced may be terminated by the board as authorized by this act; but such imprisonment shall not exceed the maximum term provided by law for the crime for which the prisoner was convicted and sentenced; and no prisoner shall be released until after he shall have served at least the minimum term provided by law for the crime for which he is convicted.

"SEC. 2. Every clerk of any court by which a criminal shall be sentenced to any prison, whenever the term of such sentence may not be fixed by the court, shall furnish the warden or other officer having such criminal in charge a record containing a copy of the information or complaint, of any special plea, the name and residence of the judge presiding at the trial, also of the jurors and of the witnesses sworn on the trial, with a statement of any fact or facts which the presiding judge may deem important or necessary for the full comprehension of the case, and of his reasons for the sentence inflicted; and such copy, statement, and abstract, signed by the clerk of the court, shall be *prima facie* evidence against the convicted person in all proceedings for the relief of such person by a writ of *habeas corpus* or otherwise. The clerk of the court shall be entitled to such compensation in every case in which he shall perform the duties required by this act as shall be certified to be just by the presiding judge at the trial, and shall be paid by the county in which the trial is had, as a part of the court expenses. The clerk shall also, upon any conviction and sentence, forthwith transmit to the warden of the prison to which sentenced notice thereof.

"SEC. 3. The board of control of prisons shall have power to establish rules and regulations under which prisoners sentenced under this act may be allowed to go upon parole outside of the buildings and inclosures, but to remain, while on parole, in the legal custody and under the control of the board, and subject at any time to be taken back within the inclosure of said prison; and

full power to enforce such rules and regulations, and to retake and reimprison any convict so upon parole, is hereby conferred upon said board, whose written order, by its clerk, shall be sufficient warrant for all officers named therein, to authorize such officer to return to actual custody any conditionally released or paroled prisoner; and it is hereby made the duty of all officers to execute such order the same as in any ordinary criminal process.

" SEC. 4. The board shall make such rules and regulations for the separation and classification of prisoners sentenced under this act into different grades, with promotion and degradation, according to the merits of the prisoners, their employment and instruction in industry, and generally, as may from time to time appear to be necessary or promotive of the purposes of this act.

" SEC. 5. And it is hereby provided that when any prisoner violating the conditions of his parole or conditional release (by whatever name) is, by a formal order, entered in the board's proceedings, declared a delinquent, he shall thereafter be treated as an escaped prisoner owing service to the State, and shall be liable when arrested to serve out the unexpired period of the maximum possible imprisonment, and the time from the date of his declared delinquency to the date of his arrest shall not be counted as any part or portion of the time served; and any prisoner at large upon parole or conditional release, committing a fresh crime, and upon conviction thereof being sentenced anew to the prison, shall be subject to serve the second sentence after the first sentence is served or annulled, to commence from the date of the termination of the first sentence.

. " SEC. 6. Nothing in this act contained shall be construed to impair the power to grant a pardon or commutation in any case.

" Approved July 1, 1889."

It is not clear from the reading of this statute whether the board of control is given the power of absolute discharge from imprisonment or not. If so, it would be clearly unconstitutional, as the exercise of such power would certainly involve one of two things, and perhaps both. It would be the exercise of judicial power in determining the term of imprisonment of a citizen, or an act of grace, to wit, the bestowing of a pardon and release of a prisoner before his term of imprisonment had expired. The judicial power of this State, by the Constitution, is vested in certain specified courts (section 1, art. 6), and the pardoning power is vested absolutely

in the Governor of the State (section 11, art. 5). The first section of the act provides that—

"The term of such imprisonment of any person so convicted and sentenced may be *terminated* by the board as authorized by this act; but such imprisonment shall not exceed the maximum term provided by law for the crime for which the prisoner was convicted and sentenced; and no prisoner shall be released until after he shall have served at least the minimum term provided by law for the crime for which he is convicted."

But from the other clauses of the statute it may be inferred, perhaps, that this release is in all cases to be a conditional one, and that it is a system of parole that is contemplated by the law.

Yet if it be considered that the only power conferred is a conditional release upon parole, still, if the prisoner keeps his parole, or, rather, if the board are of the opinion that he does, the release is in fact an absolute one. By what refinement of reasoning it can be made to appear that this is not in effect a pardon of the prisoner, is beyond my comprehension. And, in my opinion, this act also confers upon the board judicial power. The term of imprisonment is fixed by the board, and not by the court. The sentence is to confinement in the prison generally,—no term is fixed by the judge. How long that term shall be, rests entirely in the will of the board. It may be one day or fifteen years, as they see fit, in some cases.

It is in the power of the Legislature to fix all punishment for crime, and to provide for a minimum and maximum punishment, and to give the courts in which the prisoners are convicted a discretion to fix a term between these limits, but it cannot be contended for a moment that this discretion can be given to any other person or persons. To do so would imperil the liberties of the citizen by putting his punishment for wrongs

committed into the arbitrary power of unauthorized persons, without any right of remedy in the courts. Nor can the Legislature authorize a circuit judge to delegate his power and discretion in such a case to any other person or persons than himself. Under this act, the general sentence, without interference from other parties, must stand for the length of time fixed by the maximum term. The court imposing this sentence has no discretion. It may be truly said that he has a discretion in the first place as to whether he will sentence under the act or not. But this discretion is whether he will delegate his power and authority in the premises to the board of control or not, and we are now dealing with a case where he has exercised this first discretion.

It is said that this act "is evidently promoted by a desire to reform, as well as to punish; to make better those under sentence, as well as to protect society." Let us see how it will work in the interest of reform, and what will be the discretion of the trial judge,—the one person best calculated, from his knowledge of all the incidents and circumstances of the commission of the crime and of the character of the prisoner, to exercise a discretion in fixing the term of imprisonment. Take, for instance, a person convicted of manslaughter. The maximum penalty is imprisonment in the State prison for 15 years, the minimum a fine not exceeding $1,000; the sentence may be one day's imprisonment, it may be a fine of one cent. If the crime appears to be somewhat of an aggravated character, and the prisoner a bad man and an old offender, the circuit judge may reason, "There is no hope of reforming this man, so I will sentence him to ten years in State prison." At the end of ten years the prisoner is released unconditionally. In another case the nature of the crime may be such that the circuit judge may think the prisoner ought not to

be let off with a fine, but deserves imprisonment; but there is hope for reform, and he therefore concludes to sentence him under the indeterminate law. The moment he pronounces this sentence the term of imprisonment is entirely, not only at the discretion of the board of control, but at their will and pleasure. No court can review their action. They may discharge him the next day after he arrives at the prison, but, worse than this, they may keep him confined for 15 years. If the board are honest men, the term of imprisonment depends on his behavior after he enters the prison. If they are not honest, it depends solely on their will. When the convict, in whose interest so-called humanitarians have devised this matter of indeterminate sentence for his reform, enters the prison, he becomes the servant and slave of the prison board, and no court in the country has any power to protect his rights or redress his wrongs. Their discretion is not reviewable by the courts; it is arbitrary.

The supposed action of the judge in manslaughter cases is exemplified by the action of the circuit judge in the case before us. He was desirous of sentencing Cummings under the indeterminate law. If he had imposed the sentence in accordance with the statute, the maximum term would have been five years, and the minimum, imprisonment for one day, or a fine of one cent. The court thought, however, he ought to go to prison two years at least, and not more than four years, so the sentence was to be—

"Confined in the State House of Correction and Reformatory at hard labor for a period of not less than two, nor more than four, years, from and including this date, in the discretion of the board of control of prisons of the State of Michigan."

The court fixed the minimum and maximum, and gave the board a leeway between in which to use their discre-

tion. Here the circuit judge used some discretion and delegated some to the board; but, under the act, he must delegate it all to them, or not sentence under the statute at all.

We have held that a circuit court commissioner could not, although going through the forms of a judicial proceeding, release a prisoner from confinement by a writ of *habeas corpus*, because no judicial power is vested in such officer. *In re Buddington*, 29 Mich. 472; *In re Burger*, 39 Id. 203. The Legislature cannot confer judicial power upon any officers not specified in the Constitution. *Chandler v. Nash*, 5 Mich. 409. It was held in *People v. Brown*, 54 Mich. 15, that the pardoning power in this State belongs to the Governor alone, and that no judge can exercise it by indefinitely suspending the sentence of a convicted criminal; yet, under the law before us, the circuit judge by his sentence may delegate the power to the prison board to release a prisoner, and, in effect, pardon him in many cases the first day that he is imprisoned.

But it is claimed that the pardoning power is not granted to the board of control by this statute, because there is no authority to discharge prisoners absolutely conferred upon the board. It is argued that the power granted by this act is only to permit prisoners sentenced under it to go upon parole in the legal custody and control of the board, subject at any time to be taken back within the inclosure of the prison. If this be so, what is meant by this parole, and what is the power of the board? Can they let one man out, not to go beyond a five-mile limit, another to keep within the county where the prison is located, the third to keep within the congressional district, the fourth not to go outside the State, the fifth to keep himself within the limits of certain states of the Union, the sixth not to leave the United

States, and the seventh not to visit England, and the others confined to certain localities, at the will and pleasure of this board? Or does the law contemplate that this parole shall be in fact a release from prison, with only the condition that the board may bring the person on parole back again if they see fit, and make him serve his whole unexpired maximum term within the prison walls? In any event, this parole system is as obnoxious to the Constitution as an unconditional release by the board would be; and, if they have the power to release on conditions, those conditions may be made so trifling as in fact to be no conditions at all. In the case of *People v. Reilly*, 53 Mich. at page 263, the present Chief Justice of this Court, in speaking of the action of the circuit judge in permitting a convicted person to go upon his own recognizance for over a year, and then calling him into court and sending him to State prison for four years, said:

"If the judge entertained serious doubts of his guilt, he should have recommended the Governor to pardon the respondent; and, if he entertained no serious doubts of his guilt, he should have pronounced judgment, instead of setting the criminal at large upon his own recognizance. If such power can be exercised by a judge, it incorporates into our administration of the criminal law the 'ticket-of-leave' system of the English judicature, without its surveillance and checks, and places the criminal at the caprice of the judge, subject to be called up for sentence at any time. If the judge can delay the sentence one year, I do not see why he may not fifteen years. An exercise of such power, in this age, would be no less revolting to our sense of justice than was the exercise of such power in the reign of James I., when he sent Sir Walter Raleigh to the block fifteen years after his conviction."

This law introduces the "ticket-of-leave" system, and places despotic powers in the hands of the prison board over the persons sentenced under this statute.

If all there is to this law is this system of parole, as contended by the counsel for the people, then it cannot stand under our ruling in *People v. Moore*, 62 Mich. 497. In that case it was held that the agent or keeper of a prison could not arrest and bring back into the prison a convict pardoned by the Governor on conditions, for a violation of such conditions, unless such convict was arrested, held, and tried for such violation in the same manner as other offenders against the criminal laws. The Governor has the undoubted right to pardon. He may pardon on conditions; but neither he nor any other person can have, under our laws, the sole right to determine whether or not such conditions have been violated. This must be determined by the courts by the usual and proper proceedings. The act of the Legislature in that case, authorizing the arrest of such a pardoned convict, without a warrant, for an alleged violation of the conditions of his pardon, was held unconstitutional and void. The writer of this opinion (page 500) said in that case:

"When a person has been set at liberty under the pardon or the commutation of his sentence by the executive, he becomes once more a full citizen, clothed with all the rights, privileges, and prerogatives that belong to any other freeman. He cannot be sent out half free and half slave. He is not to be let out with a rope around his body, as it were, with one end in the hands of the warden, to be hauled back at the caprice of that officer. He must go out a free man, and remain a free man until he breaks the condition of his pardon. He must enjoy the blessings and benefits that belong to an American citizen until he has violated the law of his release. His character may be tarnished and his reputation soiled by his imprisonment, but his rights as a citizen are unimpaired. He is clothed, as he passes out of the prison door, with the same garb of freedom that was removed from him when he went in.

"He has a right to his liberty the same as any other

88 Mich.—17.

citizen, so long as he keeps the condition of his pardon, and he cannot be deprived of that liberty save in the mode prescribed by the Constitution and laws of our State, as applied to any other citizen. If the breaking of the condition is in the nature of a crime, or punished as such, with penal consequences, that crime, or act punished as a crime, must be established as any other crime would be. He is presumptively innocent until proven guilty, and his guilt must be established under the due forms of law, and by the same processes applied to others. There can be no special legislation separating him, in his rights and privileges, from his fellows, and shackling some of his prerogatives.

"As none, under our institutions, are entitled to special privileges, so none can be shorn by special legislation of any portion of their rights and franchises as freemen. If a condition is imposed that he shall not do any thing or things, this does not hamper or abridge his rights or liberties until the condition is broken; and, in order to remand and confine him in prison again, the fact of the violation of such condition must be established by the due administration of the law, as in other cases of the violation of the penal statutes.

"The authority conferred upon the agent of the State prison, or the keeper of any other penal institution, to arrest and detain such person in his prison or house of correction, without complaint or warrant, and to keep him there without bail, and without preliminary examination, as a convict, until the prosecuting attorney of the county may choose, when the next term of court opens, to file an information against him, cannot be tolerated or permitted under our Constitution, and is repugnant to the spirit of our institutions.

"By the operation of this statute, the person pardoned and absolved from the penal consequences of his crime, we must presume for good cause, is not free upon his release. He is subject to the will of a master. The warden or other official can reach out his hand at any moment, and pull him back into prison, governed by no restrictions save the will of the officer. When the warden's hand is laid upon the released convict, he becomes his absolute servant and prisoner until the prosecuting attorney gets time or sees fit to move. This arbitrary power and authority over the liberty of another is pos-

sessed by no other officer in our government, in times of peace. It cannot lawfully exist in a free country."

This language applies with still more force to the act before us, for here neither the prosecuting attorney nor the court can intervene between the board and the convict. This law is subject to the same infirmity and is more pernicious. Any convict thus released on parole can at any time be brought back into the prison upon the written order of the board, which all officers must obey. All that is necessary is for the board to enter a formal order that the convict is a delinquent,—has violated the conditions of his parole,—and that is the end of it. The convict is not to have a hearing, and no court has power to interfere in his behalf, if this law is constitutional. Nor is this all. He is to be treated thereafter as an escaped prisoner, owing service to the State, and loses the time even that he has earned by keeping the conditions of his parole perhaps for years; and if he commits another crime while he is at large upon his parole, and is convicted thereof, his new sentence is deferred until he has served out his old, meting out to him double punishment for his last crime.

I have not sufficient words at my command to use in condemnation of this statute. It would fill our State with convicts—they could not be called freemen—running at large outside of our prison walls, all liable at any moment to be taken back inside at the will of four individuals, no better probably in their impulses and caprices than the average man. These people thus at large would not only be subject to the will and pleasure of their masters, without hope of redress if wronged by them, but they would be out of prison under various conditions, and such as the board might impose upon them, without regulation or restriction from any other power or authority,—one under the condition that he shall drink no

intoxicating liquor, and another that he shall not chew tobacco, and still another that he shall not use opium or drink strong coffee.   There is no limit or qualification to the conditions that may be imposed.

In looking upon this law, it is difficult to see in what respect this system of parole differs from a pardon by the Governor upon conditions.   Is it not in fact a pardon,— a release upon conditions?   If it is not, if the faith of the board of control is not to be kept, and the convict has no certainty that if he keeps the conditions he will not be again imprisoned, then the whole scheme is a delusion and a snare, and unworthy a place upon the statute-books.   But, as it is, the only guaranty of a person so released of such good faith is the pleasure of the board.

This system of parole is either a pardon upon conditions, and therefore unconstitutional, or it is no release at all, and only a permission to go outside of the walls, and stay as long as the board may will.   If it is the latter,—a simple leave to stay outside until the board see fit to call them in,—the law evidently does not meet the intention of the Legislature, and is not only undesirable, but indefensible.   If it is a pardon upon conditions, as the Legislature no doubt intended it should be, then it is open to all the constitutional objections mentioned in *People v. Moore*, 62 Mich. at page 502.

The term of imprisonment under this law depends, not upon the character of the crime committed, but upon the behavior of the prisoner after he enters upon his sentence. The prisoners are to be classified into different grades—

"With promotion and degradation, according to the merits of the prisoners, their employment and instruction in industry, and generally, as may from time to time appear to be necessary or promotive of the purposes of this act."

The hardened criminal may more easily submit to the discipline of the prison than the younger, but more impulsive, offender, and therefore get his release sooner. The term of imprisonment depends upon the ability of the convict to please the prison officials in his deportment, and not upon the enormity of his offense.

This law, if permitted to stand, would be a convenient one for judges who might dislike to perform an unpleasant duty. When a person of influence or wealth was convicted, and the usual pressure in such cases brought to bear upon the trial judge to impose a light sentence, how easy it would be to impose a general sentence, and shift the responsibility of fixing its actual term upon the board of control of prisons, and let them stand the siege, which would at once commence, to procure his release. The law, in my opinion, is not only unconstitutional, as heretofore pointed out, but also wrong in theory and dangerous in practice. That such laws have been adopted by some of the states of the Union has no bearing in favor of this act. A similar statute was sustained in Ohio, but the reasoning of the opinion is not at all satisfactory to me, and does not meet the objections raised against the law. See *State v. Peters*, 43 Ohio St. 629 (4 N. E. Rep. 81).

It is also urged in support of this law that it is no more despotic and arbitrary than the law providing for a deduction of time from each year of the sentence of a convict who has not infracted the rules of the prison during that time, and it is asserted that the constitutionality of such law has lately been recognized by this Court. *In re Walsh*, 87 Mich. 466. But there is a material difference between the two enactments. How. Stat. §§ 9703, 9704, provide for a certain reduction of the sentence for good behavior. It is not left at the will or caprice of any one. It is provided that the rules of

the prison shall be known to the convict, and that they shall provide what the penalty shall be for an infraction, of such rules; that a record shall be kept; and that the rules shall be definite and certain, and apply to all the convicts alike. Such a law was sustained in Massachusetts (13 Gray, 618), upon the ground that the sentences were not rendered indefinite or uncertain thereby, the judges saying in the opinion:

"The scale of deduction is not to depend on any varying or capricious notions which any officers or superintendents of the prison may entertain of the good behavior or good disposition of a convict. It is made to depend upon a fact, ascertained by a fixed rule, entered on the journals of the prison, recorded each month; that is, entered in a book permanent in its character, fixed and unchangeable when once entered. These books of record are always accessible, and, although the officers may all change, the record is there."

We also held in the Walsh case that the enforcement of our statute, and the deduction of lost time under it, could not be left to the will or caprice of any prison official, and that the prison board could not alter or change a record once made to militate against a prisoner; that it must be enforced under fixed rules, known to the convicts; and that the record must be so kept that the convicts would not be left at the mercy of the mistakes of prison officials. Yet, as plain as these statutes are, in the Walsh case it was found that, ever since the passage of this law allowing deductions, the prison board had disregarded the statute, and built up a system of their own, which was unjust and pernicious, as well as indefinite and uncertain in its operation. But the law under consideration goes further, and proposes, without regulation or restriction, to give the prison board almost unlimited authority as to the release and discharge of prisoners, without the control of the courts, and without any appeal to any earthly power. It may further be said that the

statutes in relation to deductions do not give any power to the board to extend the term of imprisonment. The law under consideration does. In order to sustain the statute, it must be argued and considered that the convict is really under sentence all the while; that he is still a convict, although outside the walls of the prison. He is as much under the control of the authorities as is the "trusty" convict, who is allowed at times to be outside at work or to run errands. Yet, if he violates the conditions of his parole after he has been out 10 years,—if his maximum term has not expired,—he can be, taken back without trial, or any investigation save by the prison board, and made to serve the 10 years beyond his maximum term. See section 5 of the act.

It is a wonder to me that such a law as this, giving such unheard-of power to four men, not elected by the people, but holding their offices by appointment, could have been enacted, in view of our Constitution, and the whole theory of our State government, and in the light and example of the history of the establishment and growth of constitutional liberty in this country.

In this case the sentence of Cummings is good, under our previous decisions, for two years; at the end of that period he must be discharged.

CHAMPLIN, C. J., McGRATH and LONG, JJ., concurred with MORSE, J.

GRANT, J. (dissenting). Upon conviction for the crime of larceny, the respondent was sentenced by the court—

"To be confined in the State House of Correction and Reformatory, at hard labor, for a period of not less than two, nor more than four, years, from and including this date, in the discretion of the board of control of prisons of the State of Michigan."

In imposing this sentence, the court evidently intended a compliance with Act No. 228, Laws of 1889. I do not

think this conforms to the statute. The sentence there provided is a general one, and does not confer upon the court the power to fix a minimum sentence. The only sentence provided in this act is that the convict be confined in one of the places mentioned. He can then only be released before the expiration of the maximum term of confinement fixed by law by the board of control, unless pardoned by the Governor. The sentence, however, is an absolute one for two years, is therefore legal, and must be sustained.

While the constitutionality of this act is not necessarily involved, yet as it has been presented by counsel, and a speedy determination of the question seems to be required by public interests, we have concluded to dispose of it. Its constitutionality is challenged on two grounds:

1. Because it interferes with the pardoning power, which is alone possessed by the Governor.

2. Because it confers judicial powers upon the board of control, which, by the Constitution, are solely vested in the courts.

Sentence under this act is not made compulsory, nor does it take away the discretion lodged by the Constitution in the courts. It but gives to the courts the power to sentence under this act if, in their judicial discretion, they choose to do so. They may still impose a determinate sentence under other statutes, in which cases the provisions of this act do not apply. But if, in their judgment, in view of the circumstances of the particular crime, and the character of the criminal, they deem it for the interests of the criminal, as well as of society, they may impose sentence under this act. The constitutional power of the courts is neither abridged nor enlarged. The character and extent of the punishment are clearly within the exclusive control of the Legislature. If, therefore, the act is to be declared unconstitutional,

it must be because it warrants an unconstitutional interference with the judgments of the courts. A careful examination, therefore, of the power conferred upon the board of control, is necessary to a proper determination of the question.

We may pass without discussion the claim that it interferes with the pardoning power of the Governor. The act does not attempt to confer any power upon the board to pardon.

"A pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed." *U. S. v. Wilson*, 7 Pet. 150.

Section 6 expressly declares that nothing in the act shall be construed to impair the power to grant a pardon or commutation in any case.

This act was copied from that enacted in Ohio in 1884, which was held constitutional by the supreme court of that state. *State v. Peters*, 43 Ohio St. 629. Other states have also adopted similar provisions. The object of this law is well stated in the opinion in the Ohio case, viz.:

"It is evidently prompted by a desire to reform, as well as to punish; to make better those under sentence, as well as to protect society."

A similar law has been sustained by the supreme court of Massachusetts. *Conlon's Case*, 148 Mass. 168 (19 N. E. Rep. 164).

The only additional power conferred upon the board by this act is to allow prisoners sentenced under it to go upon parole outside the buildings and inclosures, remaining while on parole in the legal custody and under the control of the board, subject at any time to be taken back within the inclosure of the prison. This is the power, if any, which is judicial, and therefore unconsti-

tutional. The term of his release depends upon the observance of the conditions of his parole. This is left with the board to determine, but I do not think this a judicial act. . If the power exists to let a convict out on parole, upon such terms and conditions as the board shall establish and the convict agree to, I think it competent to clothe the board with the power to determine when his parole is broken. The convict agrees to this as one of the terms of his parole.

The power of the Legislature to interfere with and modify the sentences of prisoners by the courts has long been recognized in this and other states, and in so doing it has never been thought that the legislative authority was encroaching upon the judicial authority. The following are illustrations from our own statutes: The law requires the courts to sentence murderers of the first degree to solitary confinement at hard labor in the State prison for life. The law also confers upon the inspectors of the State prison the power to release such convicts from solitary confinement, to employ them as other convicts, and to allow them to correspond with their relatives and friends. For 14 years the law of this State has provided that every prisoner, who shall have no infraction of the rules of the prison or laws of the State recorded against him, shall be entitled to a deduction for each year of his sentence. The validity of this act has been recognized in *mandamus* proceedings brought to this Court by a prisoner in the Jackson prison, and the board directed to allow the prisoner his good time. *In re Walsh,* 87 Mich. 466. This deduction is two months each year for the first two years, and finally amounts to six months each year. How. Stat. § 9704. This record must be kept by the warden, and then the inspectors are required to determine how much of the good time earned shall be forfeited for one or more violations of the prison

rules. Is it not apparent that these two acts of the Legislature constitute as much of an interference with the judgments of the courts as does the act now under consideration? The effect of both is to modify the sentence of the court. In both, discretion is lodged with the prison managers. Yet the validity of the former acts has never been questioned. The power invested in our prison managers is just as "despotic" in the one case as in the other. In fact, all these laws are humane, and their tendency is to reform criminals and protect society. Such laws should only be held unconstitutional when there is a clear infraction of the Constitution.

It is clearly the prerogative of the Legislature, under the Constitution, to fix all punishments for crime, and to provide for a minimum and maximum punishment. It is only limited by the Constitution to the rule that they must not be cruel or unusual. The Legislature by this act has given the courts the power and discretion to sentence a dangerous criminal to prison for the maximum term, and conferred the power and discretion upon the board of control, whose duty it is to watch the conduct and character of the convict, so to modify that sentence as to give him temporary and conditional liberty. I am unable to see in this any cruel or unusual punishment, or any usurpation of, or encroachment upon, judicial powers as fixed by our Constitution. If the constitutional power exists in the Legislature to provide for the absolute discharge of a prisoner before the expiration of his term of imprisonment fixed by the court, it must follow that the right exists to provide for his conditional release. No constitutional right of the prisoner is infringed, for his term of imprisonment may be thereby shortened, while society may be benefited by his reformation. The right to shorten terms of imprisonment was sustained by

the supreme court of Massachusetts, Chief Justice Shaw being then upon the bench. 13 Gray, 618.

To declare this act unconstitutional would result in the abrogation of our most salutary laws, holding out wise inducements for the reformation of criminals. It would result in the discharge of many prisoners who have been sentenced under this act, the validity of which appears to have been generally recognized by the circuit judges.

It should be accordingly certified to the State House of Correction and Reformatory at Ionia that the sentence of the court is valid for two years, subject to the deduction provided in How. Stat. § 9704.