received such fund and had disposed of it in the administration of the estate, he in legal contemplation had it in his custody at the time the decree was made; and, for the purpose of the effectiveness of the obligation assumed by the sureties in his official bond as guardian, his liability to account for it conclusively charges him with having the requisite fund."

It is unnecessary to consider whether these decisions go to the extent claimed by the respondent, or are distinguishable from the case at bar, as the result of the authorities is that no action can be maintained against sureties on the bond of a general guardian until there has been an accounting before the surrogate and a decree or order made establishing the default and the extent of the deficiency. Hood v. Hood, 85 N. Y. 561; Haight v. Brisbin, 100 N. Y. 219, 3 N. E. 74; Perkins v. Stimmel, 114 N. Y. 359, 21 N. E. 729, 11 Am. St. Rep. 659; French v. Dauchy, 134 N. Y. 543, 31 N. E. 1041; Rieder v. Steinhauer, 15 Abb. N. C. 428. As was said by Judge Potter in Perkins v. Stimmel:

"There have been intimations that in some cases that there may be exceptions to the rule. yet I find no case out of the general rule. nor what extraordinary circumstances would suffice to take a case out of the rule."

The order or decree of the surrogate directing payment to the plaintiff is not of the character of a decree rendered upon a judicial settlement of the account of a guardian. It does not contain a summary statement of the account settled, or refer to such a summary. Code Civ. Proc. § 2551. It was not made on a final accounting, and does not purport to be the result of a proceeding for an accounting. On the contrary, it recites that it is based upon a decree made in the proceeding for the final settlement of the account of Samuel H. Hodgkins as substitute guardian of the plaintiff and upon the determination of the surrogate that the investment of the sum of $2,000 in the Empire Loan & Investment Company "was illegal, improper, and unauthorized, and that the said bonds are and were wholly worthless." I am of the opinion that the decree of 1906 was not sufficient to determine the default of the guardian, and did not fix the liability of the sureties upon the bond of the guardian.

I think, therefore, that the judgment must be reversed, and a new trial granted, with costs to abide the event. All concur; SMITH, P. J., and KELLOGG, J., in result.

---

(55 Misc. Rep. 22)

PEOPLE ex rel. BETTRAM v. WARDEN OF CITY PRISON.

(Supreme Court, Special Term, New York County. May 31, 1907.)

CONSTITUTIONAL LAW—EXECUTIVE POWERS—ENCROACHMENT ON JUDICIARY.

Pen. Code, § 700, provides that a male convicted of felony who has not theretofore been convicted of a crime punishable by imprisonment in a state prison may be sentenced to imprisonment in the state reformatory at Elmira. Laws 1887, p. 917. c. 711. § 9. provides that any person who shall be convicted of an offense punishable by imprisonment in the state reformatory at Elmira. and who shall be sentenced to imprisonment therein, shall be imprisoned according to that act. and not otherwise, and that the court imposing the sentence shall not fix the duration thereof. but that

the term of imprisonment shall be determined by the managers of the reformatory. Laws 1900, p. 892, c. 378, § 20, provides that the board of managers may allow any prisoner confined in the reformatory to go on parole outside the reformatory buildings. Section 21 (page 892), provides that, if the board of managers have reasonable cause to believe that a paroled prisoner has violated the conditions of his parole, he may be retaken. Section 24 (page 894) provides that, when it appears to the board of managers that there is reasonable probability that any prisoner will remain at liberty without violating the law, they shall issue an absolute discharge from imprisonment. *Held*, that the authorization of the sentence of a prisoner to the state reformatory, without a fixed term, was not unconstitutional, as being an encroachment on the judicial department of the state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 61.]

Habeas corpus by the people, on relation of Charles Bettram, against the warden of the city prison. Writ dismissed.

Fischer, Hansen & Michealson, for relator.
Robert Johnstone, Asst. Dist. Atty., for respondent.

MacLEAN, J. The return to the writ of habeas corpus discloses that the relator is "under custody" pursuant to an arrest by order of the state board of managers of reformatories, signed by the secretary and countersigned by the superintendent of the state reformatory at Elmira, wherein is the direction:

"It appearing to the state board of managers of reformatories that Chas. Bettram (13,805), an inmate of said reformatory, conditionally paroled and in the legal custody of said managers outside the reformatory inclosure, has violated the conditions of his parole, it is hereby ordered that the said Bettram (13,805) be retaken and returned forthwith to our actual custody within the reformatory inclosure."

By section 700 of the Penal Code it is provided that:

"A male between the ages of sixteen and thirty, convicted of felony, who has not theretofore been convicted of a crime punishable by imprisonment in a state prison, may, in the discretion of the trial court, be sentenced to imprisonment in the New York state reformatory at Elmira, to be there confined under the provisions of law relating to that reformatory."

And section 9 of chapter 711 of the Laws of 1887 provides that:

"Any person who shall be convicted of an offense punishable by imprisonment in the New York state reformatory at Elmira, and who, upon such conviction, shall be sentenced to imprisonment therein, shall be imprisoned according to this act and not otherwise, and the courts of this state imposing such sentence shall not fix or limit the duration thereof. The term of such imprisonment of any person so convicted and sentenced shall be terminated by the managers of the reformatory as authorized by this act; but such imprisonment shall not exceed the maximum term provided by law, for the crime for which the prisoner was convicted and sentenced."

As stated in People ex rel. Duntz v. Coon, 67 Hun, 523, 525, 22 N. Y. Supp. 865:

"It has never been suggested that section 700 of the Penal Code providing that persons between 16 and 30 years of age committing a felony may be sent to the reformatory at Elmira was unconstitutional."

Resort must therefore be made particularly to section 9 of chapter 711 of the Laws of 1887, supra, and to sections 20, 21, and 24, c. 378, pp. 892–894, of the Laws of 1900, in order to support the present contention for the prisoner that the statute creating the New York state reformatory at Elmira is unconstitutional, in that it violates "the fundamental principles of our system of government, both state and national; that is, that the three co-ordinate departments of our government, judicial, legislative, and executive, should be kept separate and distinct."

Besides the readiness of the court of first instance to defer in terms to every statutory deliverance of the Legislature not manifestly unconstitutional, consideration of the provision now mooted is approached with something of predilection, inasmuch as it authorizes a course in accordance with the betterment in prison discipline and treatment of convicted offenders, begun in 1840 under the Anglican system of probation, whereby, without losing from view the desirability of leaving upon the mind the salutary dread of the recurrence of punishment, which may be the means of deterring him, and, through his example, others, from the commission of crime, the person convicted may obtain enlargement under a license to go and come much as he pleases, subject, however, to forfeiture upon conditions distinctly stated and well known to the recipient and associated classes. By accepting the license the prisoner morally pledged compliance with its conditions, and so, upon their breach, his own surrender. If such modest examples of the Regulus type be not expectable in these days, repudiation of his tacit undertaking lessens the basis for sympathetic appeals as for the hardship of the situation in which he has placed himself.

While similar statutes providing for indeterminate sentences and the disposition, control, and release of prisoners have been, by the Supreme Court of Michigan in People v. Cummings, 88 Mich. 249, 50 N. W. 310, 14 L. R. A. 285, where, as has been said, the reasoning commends itself as worthy of the most careful consideration of the courts and bar of the country, declared an unlawful invasion of the judicial and of the executive powers of the state, beyond the power of the Legislature to make lawful, and so unconstitutional, the Supreme Court of Indiana (Miller v. State, 149 Ind. 607, 49 N. E. 894, 40 L. R. A. 109) and the Supreme Court of Illinois (George v. People, 167 Ill. 447, 47 N. E. 741) have upheld them as not in violation of constitutional rights. Although our court of last resort appears not to have passed directly upon the constitutionality of the provisions under present consideration, it may be said to have done so indirectly by passing upon the provisions of the Penal Code relating to indeterminate sentences; that is, the fixing, as here, of a maximum and minimum sentence, considered in conjunction with the law relating to prisons and prisoners and their release by the board of commissioners on parole after service, at least of the minimum sentence, and liability to rearrest upon violation of the parole. "This," says the court, "is a merciful exercise of legislative power, which has been repeatedly approved by the Supreme Court. This form of legislation has been sustained by the courts of many other states. * * * The legislation complained of is constitutional and in the interest of the defend-

ant, who stands before the court charged with a first offense." People v.. Adams, 176 N. Y. 351, 363, 68 N. E. 636, 52 L. R. A. 406, 98 Am. St. Rep. 675.

The writ will be dismissed.