CHARLES E. GEORGE

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa May 11, 1897—Rehearing denied October 12, 1897.*

1. PLEADING—*criminal—caption of indictment is no part thereof.* The caption of an indictment is not a part thereof, and a mistake in the caption in the statement of time is not fatal.

2. SAME—*counts for felony and for misdemeanor, relating to same transaction, may be joined.* Counts for felony and counts for misdemeanor may be joined in one indictment where all the counts relate to the same transaction.

3. CRIMINAL LAW—*attorney converting to his own use money collected for client is guilty of larceny.* Under section 75 of the Criminal Code (Rev. Stat. 1874, p. 362,) an attorney who converts to his own use money which he has collected for and which belongs to a client is guilty of larceny.

4. CONSTITUTIONAL LAW—*act of 1845 authorizing jury to fix term of imprisonment is not part of constitution.* The act of 1845, providing that the jury shall say in their verdict for what term the offender shall be confined in the penitentiary, (Rev. Stat. 1845, p. 182, sec. 168,) though in force at the time of the adoption of the constitution of 1870, did not become a part thereof.

5. SAME—*the right of trial by jury guaranteed by the constitution is that right which existed at common law.* The right of trial by jury which is guaranteed by the Illinois constitutions of 1818, 1848 and 1870 is the same in each case, and is the right of trial by jury as it existed at common law.

6. SAME—*jury at common law did not fix the term of punishment.* Under the common law the term of punishment of a person convicted of a felony by a jury was fixed by the court according to the laws then in force, and a prisoner had no right to have a jury fix his term of punishment.

7. SAME—*act of 1895, called the "Indeterminate Sentence law," does not impair right of jury trial.* The "act in relation to the sentencing of persons convicted of crime, and for providing a system of parole," (Laws of 1895, p. 158,) is constitutional, and does not impair the right of trial by jury "as heretofore enjoyed."

8. SAME—*legislature has power to provide for the paroling of prisoners.* The legislature may empower penitentiary commissioners to make rules and regulations for the government and discipline of prisoners, even to the extent of empowering them to provide for the temporary release of prisoners on parole.

9. SAME—*act of 1895 does not confer judicial powers on penitentiary commissioners.* The act of 1895, concerning the sentencing of criminals, is not unconstitutional, as conferring judicial power on the penitentiary commissioners, who are made prison boards by the act, or upon the wardens of the penitentiaries. (MAGRUDER, C. J., dissenting.)

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. NATHANIEL C. SEARS, Judge, presiding.

WILLIAM MCPHERSON, and WILLIAM E. HUGHES, for plaintiff in error:

The caption of an indictment must state that it was found by a grand jury of the proper county, and must give the time and term at which it was found. *Reeves* v. *State,* 20 Ala. 33; *Tipton* v. *State,* Peck, (Tenn.) 308.

An indictment including a count in felony joined with a count for a misdemeanor is objectionable, and should be quashed on motion, or the prosecutor be put to his election. *Rex* v. *Gough,* 1 M. & R. 71; 1 Bishop on Crim. Proc. secs. 198, 199.

In all cases where a person receives money, a portion of which belongs to himself as a commission on the whole amount, he is not guilty of embezzlement though he converts the whole to his own use. 6 Am. & Eng. Ency. of Law, 474, 475, notes 1 and 2, and authorities cited.

Article 6 of our constitution provides: "The judicial powers, except as in this article is otherwise provided, shall be vested in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and in such courts as may be created by law in and for cities and incorporated towns."

To adjudicate upon and protect the rights and interests of individual citizens, and to that end apply the laws, is the peculiar province of the judicial department. Cooley's Const. Lim. 110.

It was not competent at common law to inflict an imprisonment without limitation. *Rex* v. *Hall,* 3 Burr. 1637;

*Respublica* v. *DeLongchamps*, 1 Dall. 120; *Washburn* v. *Belknap*, 3 Conn. 502; *Gross* v. *Rice*, 71 Me. 241; *People ex rel.* v. *Pirfenbrink*, 96 Ill. 68.

The constitution of 1870 (art. 2, sec. 5,) provides as follows: "The right of trial by jury as heretofore enjoyed shall remain inviolate."

By the express provisions of the statute of Illinois in force at the time of the adoption of the constitution of 1870, the right of trial by jury carried with it not only the right to have the jury determine the extent of the guilt, if guilty at all, but also the extent to which the accused should be punished. Rev. Stat. 1845, p. 182, sec. 168.

A constitution should be construed so as to give effect to the intent of the People in adopting it. Cooley's Const. Lim. 68.

The law existing at the time of the adoption of the constitution must be kept in view. Cooley's Const. Lim. 73.

Whenever the right of trial by jury is guaranteed by the constitution without qualification or restriction, it must be understood as retained in all those cases which were triable by jury at the common law, and with all the common law incidents to a jury trial, so far, at least, as they can be regarded as tending to the protection of the accused. Cooley's Const. Law, 390.

EDWARD C. AKIN, Attorney General, and CHARLES S. DENEEN, State's Attorney, for the People:

The caption forms no part of the indictment. 1 Chitty's Crim. Law, 326; 9 Port. 487; *Kirk* v. *State*, 6 Mass. 471; *Duncan* v. *State*, 1 Scam. 457; *People* v. *Jewett*, 3 Wend. 322.

Different grades of an offense may be joined in separate counts. *People* v. *Sweeney*, 55 Mich. 586; *Hawker* v. *People*, 75 N. Y. 487.

Any special lien of an attorney is lost by parting with possession. *Sanders* v. *Seelye*, 128 Ill. 631; *Nichols* v. *Poole*, 89 id. 491.

An attorney has no lien on moneys collected, in the absence of an express agreement. *Dougherty* v. *People*, 165 Ill. 384; *Story* v. *Hull*, 143 id. 506.

If an attorney at law collects money for his client, he acts, in so doing, as his agent as well as his attorney. *People* v. *Converse*, 74 Mich. 478.

The State need not elect, in an embezzlement case, upon which act it will proceed. *Kerr* v. *People*, 110 Ill. 657.

The Indeterminate Sentence law is constitutional. *People* v. *State Reformatory*, 140 Ill. 422, and 148 id. 413; *State* v. *Peters*, 43 Ohio, 629; *California* v. *McCauley*, 15 Cal. 429; *People* v. *Degnen*, 54 Barb. 105.

A count for felony and a count for misdemeanor may be joined. *Herman* v. *People*, 104 Ill. 528.

The constitutional right of trial by jury is limited to the trial of the question of guilt or innocence. *People* v. *State Reformatory*, 148 Ill. 413.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an indictment in the Criminal Court of Cook county, at the March term, 1896, for embezzlement. The indictment contains three counts. The first two were found under section 75 of the Criminal Code, and the third under section 79. In the first two counts plaintiff in error, Charles E. George, is charged with the offense of larceny by embezzlement of certain property of the value of $200. It is charged in the third count "that the defendants, Charles E. George and Daniel Byrnes, on the first day of March, 1896, as attorneys, did fail and refuse to turn over, less their proper charges, upon demand by Tillie Cutta, certain moneys of the value of $200, she, said Tillie Cutta, then and there being entitled to receive said money, the same then and there being money collected by them as such attorneys at law, contrary to the statute and *contra pacem*." While the offense charged in the third count is a misdemeanor, all of the counts relate to one and the same transaction.

It is claimed in the argument that the indictment is bad, and upon that ground the court erred in denying a motion in arrest of judgment.   Two objections are urged against the indictment:   First, there was a mistake in the caption of the indictment in regard to the date it was presented; and second, a misjoinder of counts.

As respects the first objection, it does appear in the caption of the indictment that the indictment was found at the March term of the Criminal Court, 1806.   But the caption is no part of the indictment, and a mistake in the time therein stated does not vitiate the indictment. See 1 Bishop on Crim. Proc. sec. 661; Moore's Crim. Law, secs. 8-108; 1 Chitty's Crim. Law, 326; *Duncan* v. *People*, 1 Scam. 456.

In regard to the second objection, the misjoinder of counts, the question raised is settled by *Herman* v. *People*, 131 Ill. 594, where it was held that counts for felonies and counts for misdemeanors may be joined in the same indictment, where all the counts relate to the same transaction.   The authorities bearing on the question are cited and discussed in the *Herman case*, and it will not be necessary to refer to them here.

Upon the trial the jury returned the following verdict: "We, the jury, find the defendant, Charles E. George, guilty of larceny in manner and form as charged in the indictment, and we find the value of the property stolen to be $150, and we fix his punishment at imprisonment in the penitentiary.   We further find that Charles E. George is about the age of thirty-five years."   From the verdict it is apparent that the defendant was convicted under the first two counts of the indictment, and upon an examination of the evidence it will be found that the verdict is fully sustained by the evidence.   One Tillie Cutta commenced a prosecution before a justice of the peace in Cook county against a certain person for bastardy.   She met the defendant in the justice's court and employed him to attend to her case.   The case was settled for

$150, and the money was paid over to the defendant for the prosecuting witness, Cutta. The defendant put the money in his own pocket and declined and refused to pay over any portion of it, but put his client off from time to time with excuses which were without foundation. If the defendant received the money for and on behalf of Tillie Cutta, as her agent, as the evidence shows he did, and fraudulently converted it to his own use, as was proven, we see no reason why he was not properly convicted under section 75 of the Criminal Code. *Kribs* v. *People,* 82 Ill. 425.

But the main ground relied upon to reverse the judgment is, that the act of June 26, 1895, entitled "An act in relation to the sentence of persons convicted of crime and providing for a system of parole," under which the plaintiff in error was sentenced to the penitentiary, is unconstitutional. Sections 1, 2, 5 and 6 of the act are as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That every person over twenty-one years of age, who shall be convicted of a felony or other crime punishable by imprisonment in the penitentiary, excepting treason and murder, shall be sentenced to the penitentiary, but the court imposing such sentence shall not fix the limit or duration of the sentence, and the term of imprisonment of any person so convicted and sentenced shall not exceed the maximum term nor be less than the minimum term provided by law for the crime for which the person was convicted and sentenced, making allowance for good time as now provided by law, the release of such prisoner to be determined as hereinafter provided.

"Sec. 2. The commissioners of any penitentiary in this State shall constitute a prison board for the purposes hereinafter specified.

"Sec. 5. The said prison board shall have power to establish rules and regulations under which prisoners

within the penitentiary may be allowed to go upon parole outside of the penitentiary building and enclosure, but to remain, while on parole, in the legal custody and under control of the prison board, and subject at any time to be taken back within the enclosure of said penitentiary; and full power to enforce such rules and regulations, and to re-take and re-imprison any inmate so upon parole, is hereby conferred upon the warden, whose order, certified by the clerk of the prison, with the seal of the penitentiary attached thereto, shall be a sufficient warrant for the officer named in it to authorize such officer to return to actual custody any conditionally released or paroled prisoner, and it is hereby made the duty of all officers to execute said order the same as ordinary criminal process: *Provided,* that no prisoner shall be released on parole until the said prison board shall have made arrangements, or shall have satisfactory evidence that arrangements have been made, for his honorable and useful employment while upon parole, in some suitable occupation, and also for a proper or suitable home, free from criminal influences, and without expense to the board.

"Sec. 6. It shall be the duty of the warden to keep in communication, as far as possible, with all prisoners who are on parole, and also with their employers, and when, in his opinion, any prisoner who has served not less than six months of his parole acceptably has given such evidence as is deemed reliable and trustworthy that he will remain at liberty without violating the law, and that his final release is not incompatible with the welfare of society, the warden shall make certificate to that effect to the prison board, and the board shall at the next meeting thereafter consider the case of the prisoner so presented, and when said board shall decide that said prisoner is entitled to his final discharge, said board shall cause a record of the case of said prisoner to be made, showing the date of his commitment to the peni-

tentiary, his record while detained therein, the date of his parole, his record while on parole and their reason for recommending his final discharge. Said record shall be signed by the board and attested by the secretary, with the seal of the penitentiary, and sent to a judge of the court that sentenced said prisoner to the penitentiary. Said judge shall enter an order for the final discharge of said prisoner from further liability under his sentence. On being approved by the Governor said order shall constitute a full discharge of said prisoner from further liability under his sentence. But no petition or other form of application for either the parole or final release of any prisoner shall be entertained by the warden or prison board. Nothing in this act shall be construed as impairing the power of the Governor to grant a pardon or commutation in any case."

As has been seen, the jury by their verdict found the defendant guilty of larceny as charged in the indictment, but did not in the verdict fix the time the defendant should be confined in the penitentiary. The court, in entering judgment on the verdict, sentenced the defendant to the penitentiary, to be confined therein "until discharged by the prison board of said penitentiary as authorized and directed by law, provided such term of imprisonment in said penitentiary shall not exceed the maximum term for the crime for which the said defendant was convicted." It is claimed in the argument that the sentence must be based upon the verdict of a jury which must fix the term of punishment, and in this case the verdict and sentence are in violation of section 5 of article 2 of the constitution, which provides: "The right of trial by jury as heretofore enjoyed shall remain inviolate."

The statute of 1845, which was in force in 1870, when the constitution was adopted, and which remained in force until the act in question was passed, in 1895, contained this provision: "In all cases where the punishment shall be confinement in the penitentiary, if the case

is tried by a jury the jury shall say in their verdict for what time the offender shall be confined, and the court, in pronouncing sentence, shall designate what portion of time the offender shall be confined to solitary imprisonment and what portion to hard labor." This provision of the statute conferring upon the jury the right to fix the term of imprisonment of a defendant on trial for a felony, it is contended, in effect became a part of the constitution by the clause that the right of trial by jury as heretofore enjoyed shall remain inviolate. We do not concur in that view. The constitution of 1818 provided (sec. 6, art. 8,) "that the right of trial by jury shall remain inviolate." That of 1848, (sec. 4, art. 13,) that "the right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." That of 1870 reads, that "the right of trial by jury as heretofore enjoyed shall remain inviolate, but the trial of civil cases before justices of the peace by a jury of less than twelve men may be authorized by law." We do not think there is any substantial difference between the provisions incorporated in the three constitutions. The right of trial by jury was the same under one constitution as under the other. The right protected by each constitution was the right of trial by jury as it existed at common law.

In *Ward* v. *Farwell*, 97 Ill. 593, where it was claimed that an act of the legislature was unconstitutional because it deprived a party of the right of trial by jury, in the discussion of the question it is among other things said (p. 611): "It is next urged that the statute is unconstitutional for the reason it does not provide for a trial by jury, and the provisions of the present constitution, and also that of 1848, with respect to this subject, are cited and relied on. The right in question pertains exclusively to the remedy, and it is therefore competent for the legislature to either extend it or contract it, except so far as it is prohibited by constitutional restric-

tions. No disposition, however, has ever been manifested on the part of the legislature or constitutional conventions to abridge it, but, on the contrary, from the formation of the State government to the present time the right as it existed by the common law, when transplanted in this country by our English ancestors, has been fully recognized and enforced by the courts, constitutional guaranties and legislative enactments, so that it exists at the present time substantially as it did then, except so far as it may have been modified by long and uniform usage."

In *Harris* v. *People*, 128 Ill. 585, where the question arose whether the Criminal Court of Cook county had jurisdiction to try a person for a felony without a jury, in the discussion of the question it is said (p. 590): "Not only have we, in general terms, adopted the common law as a system, but by the express provisions of our constitution and statutes the mode of trial in criminal cases known to that system is specifically adopted and preserved. By the clauses of the constitution above cited the common law right to a trial by jury in criminal cases is guaranteed and declared to be inviolable, and the statute requires that except as therein provided all trials for criminal offenses shall be conducted according to the course of the common law. It would thus seem that the power to conduct criminal trials in any other mode than that which prevailed at common law is necessarily excluded."

It is, however, said, that the words "as heretofore enjoyed" relate to those enjoyed at the time of the adoption of the constitution of 1870. The definition given by Webster of the word "heretofore" is: "in times before the present; formerly." The word "heretofore," as used, evidently relates to the past, and in order to determine the true meaning of the words "the right of trial by jury as heretofore enjoyed," it is necessary to go back to the common law of England. When this is done it will be

found that the right of trial by jury constitutes certain specified things, which cannot be dispensed with or disregarded on the trial of a person charged with a felony. A jury of twelve men must be empaneled, and any less number would not be a common law jury. The jury must be indifferent between the prisoner and the people. They must be summoned from the vicinage or body of the county in which the crime was alleged to have been committed. The jury must unanimously concur in the verdict. (This latter is one of the old requirements of the common law.) The final decision upon the facts is to rest with the jury, and the court cannot interfere to coerce them to agree upon a verdict against their convictions. (Cooley's Const. Lim. 394.) These are some of the rights guaranteed by the constitution. But under the common law a prisoner on trial for a felony has no constitutional right to have his term of punishment fixed by a jury. At common law the jury returned a verdict of guilty or not guilty, and the punishment was fixed by the court and governed by the laws in force. (2 Blackstone, book 4, 361.) It is therefore plain that the rights of the defendant which are guaranteed by the constitution were not infringed upon or taken from him. In *Kelly* v. *People*, 115 Ill. 583, a conviction for a second offense was sustained, where the law itself fixed the time the prisoner should be punished by confinement in the penitentiary.

If the language, "the right of trial by jury as heretofore enjoyed shall remain inviolate," shall be construed to mean that the system of trial by jury as it existed by statute at the time the constitution of 1870 was adopted was engrafted on and became a part of the constitution, as is contended, many embarrassing results never contemplated would follow. When the constitution of 1870 was adopted the statute provided that juries in all cases shall be judges of the law and fact. Did that provision of the statute become a part of the constitution, so that it is beyond the power of the legislature to change it?

At the time the constitution of 1870 was adopted the statute required the court, in the trial of both criminal and civil cases, to instruct the jury in writing, oral instructions being prohibited. If the legislature should now pass an act providing that all instructions should be oral, would such an act be unconstitutional? Suppose the legislature should pass an act adopting a new system of empaneling a jury entirely different from the one in force when the constitution of 1870 was adopted, would such an act be unconstitutional? Indeed, since the adoption of the constitution of 1870 numerous changes have been made in the criminal law relating to jury trials. Are these changes all void under the language of the constitution "as heretofore enjoyed?" Other examples might be given, but they are not required. It is manifest that the language of the constitution was never intended to confer upon the jury a constitutional right to fix the term of imprisonment on the trial of a person indicted for a felony.

It is also claimed that the act is unconstitutional because it attempts to divest the judicial department of certain of its powers and confer those powers on the executive department, in violation of article 3 of the constitution. That article provides: "The powers of government of this State are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." It may be conceded that it is beyond the power of the legislature to invest ministerial officers with judicial powers. If the act therefore confers upon mere ministerial officers judicial powers it cannot be sustained.

Before referring specially to the powers conferred by the law in question on the prison board and the warden, which are claimed to be judicial, it may throw some light

on the question to consider somewhat what may be regarded judicial and what may be regarded ministerial functions. While it might be a difficult matter to draw a line of distinction between judicial and ministerial functions which would fit every case which might arise, yet we think it can be determined from the authorities, without much uncertainty, to which the duties conferred on the prison board and the warden properly belong. In *Rowe* v. *Bowen*, 28 Ill. 116, where there was a trial of the right of property before the sheriff and a jury, as authorized by the statute where property levied upon is claimed by a third party, it was held that the trial before the sheriff and jury was not a judicial proceeding, although an appeal is allowed therefrom to the circuit court. In *Hawthorn* v. *People*, 109 Ill. 302, it was held that a statute conferring power on the circuit clerk to determine the sufficiency of bonds required to be given is not unconstitutional, as conferring judicial powers on such an officer. In *Nealy* v. *Brown*, 1 Gilm. 10, it was held that the laying out and opening of roads is not an exercise of judicial powers. In *Board of Supervisors* v. *Chicago, Burlington and Quincy Railroad Co.* 44 Ill. 229, it was held that an appeal would lie from a decision made by the board of supervisors of the county, and that the act of 1861 allowing an appeal from the determination of the board of supervisors of the county to the circuit court was constitutional and valid. It is there said (p. 235): "To insist that a board of supervisors is not a court does not decide the question, as we think. In our legislation several acts may be found giving an appeal to the circuit court in cases confessedly not originating in the exercise of judicial power by a court."

*Owners of Lands* v. *People*, 113 Ill. 296, is an interesting case on the question. It was there held that section 46 of the Drainage act of 1879, which gives an appeal from the drainage commissioners' orders confirming special assessments to the county surveyor, county treasurer and

sheriff, who are constituted an appeal board to hear and decide all appeals, and giving a further appeal from that board to the county court, is not unconstitutional, as conferring judicial powers on a non-judicial body; that the board of appeals does not exercise judicial powers, within the meaning of those words in article 3 of the constitution; that it construes no law, and no legal rights are submitted to and adjudicated by it. In the decision of the case, after quoting a definition of judicial power found in Cooley's Constitutional Limitations, 91, it is said (p.309): "It has never been held to apply to those cases where judgment is exercised as incident to the execution of a ministerial power, nor has it ever been held the exercise of ministerial power by the courts, within the meaning of this article, where they have been compelled to exercise a ministerial act as an incident to the exercise of judicial power. Thus, sheriffs exercise judgment, and therefore, strictly speaking, act judicially in hearing statements and determining as to the value of property on which to levy, and as to the sufficiency of security offered upon the execution of bail bonds; and justices of the peace exercise ministerial powers in issuing summons and executions, and circuit judges in issuing writs of *habeas corpus.* Cooley, in his work on Torts, (p. 375,) says: 'Official duties are supposed to be susceptible of classification under the three heads of legislative, executive and judicial, corresponding to the three departments of government bearing the same designations; but the classification cannot be very exact, and there are many officers whose duties cannot properly, or at least exclusively, be arranged under either of these heads. A single case may suffice as an illustration. The officers chosen to levy and apportion taxes for the inferior municipal subdivisions of the State are, in some cases, authorized, first, to determine what taxes shall be levied within the municipality for the year; second, to value the property which is to be assessed for these taxes; third, to

apportion the taxes as between the several items of property assessed; and fourth, to receive from their superior officers the statements of taxes to be assessed for more general purposes, and to apportion these in the same way.    The first of these duties partakes of the legislative, the second of the judicial, the third and fourth of the executive; but in strictness none of them can be classed as belonging specially to either department of the government, and the officers who perform them are usually designated administrative officers.'    *    *    *    We have held that assessors in valuing property for taxation, and boards of supervisors and boards of equalization in reviewing such valuations or in valuing as original assessors, act judicially, and yet it was never claimed or pretended that they are courts or usurp judicial powers in so doing.    (*Spencer* v. *People*, 68 Ill. 510; *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 id. 561.)    In *People ex rel.* v. *Supervisors*, 47 Ill. 256, it was said that the decision of a board of supervisors that a bridge at a particular point is a necessity, is *res judicata* as to that fact, —and this without holding that the board of supervisors was a court or that it was exercising judicial powers, within the meaning of the article of the constitution now before us.    In *Wright* v. *City of Chicago*, 48 Ill. 285, the question arose, in principle, precisely as it does here, on the report of the commissioners on a special assessment, and we then said, among other things:    'These commissioners were acting in a *quasi* judicial capacity, as they were required to investigate, deliberate and decide.'    In *Rich* v. *City of Chicago*, 59 Ill. 286, it was said, in answer to the objection that commissioners could not, constitutionally, be empowered to assess the damages and benefits to property affected by the improvement:    'We are, however, of the opinion that this proceeding, which is for the assessment of the damages against property specially benefited, is open to no constitutional objection.    The ninth chapter of the charter makes it indispensable to a sale

of the real estate for the payment of such an assessment that a judgment of some court of general jurisdiction be had upon the warrant. The acts of the commissioners may therefore be considered as ministerial, and not judicial. They are the means by which the proceedings are initiated and the cause brought before the court, and for that purpose are valid.'"

In the light of the authorities we will now refer to the provisions of the act for the purpose of ascertaining whether judicial powers have been conferred, as claimed in the argument.

Upon an examination of the act it will be found that there is nothing in sections 1, 2, 3 or 4 upon which the argument of counsel can be predicated. Sections 5 and 6, however, are there relied upon as conferring judicial power. It will be observed that section 3 provides that the commissioners of any penitentiary shall constitute a prison board. Section 5 provides that the prison board shall have power to establish rules and regulations under which prisoners within the penitentiary may be allowed to go upon parole outside of the penitentiary building and enclosure, but to remain, while on parole, in the legal custody and under control of the prison board, and subject at any time to be taken back within the enclosure of the penitentiary. The legislature has the undoubted right to empower the commissioners in charge of the penitentiary to make rules and regulations for the government and discipline of the inmates, and, under proper regulations, no reason is perceived why the commissioners might not allow prisoners, under certain specified circumstances, to go outside of the prison. This is all this section of the act allows. Under it the board does not discharge a prisoner. It does not release him from any part of his sentence, nor does the board exercise or attempt to exercise judicial power.

There may be some doubt in regard to the construction which should be placed on section 6, but after due

consideration we have reached the conclusion that it does not confer judicial power on the warden or the prison board. Under this section of the act, after a prisoner has been on parole not less than six months, and has given such evidence as is deemed reliable and trustworthy that he will remain at liberty without violating the law, and that his final release is not incompatible with the welfare of society, it is made the duty of the warden to give a certificate to that effect to the prison board. There is nothing more in this than a mere recommendation by the warden to the board. In making the recommendation, surely it cannot be said the warden is in the exercise of judicial power. At the next meeting of the board it is the duty of the board to consider the case of the prisoner so presented or recommended, and if the board decides that the prisoner is entitled to a discharge, they shall make a record showing certain facts and their reasons for recommending a discharge. The law does not authorize the board to discharge the prisoner nor do they attempt to enter a discharge. They merely make a record containing a recommendation that a discharge be granted. There can be no exercise of judicial power in this. The record, together with the recommendation, goes to the court before whom the prisoner was tried, and he may, if upon examination he determines that a proper case is made out for his action, enter an order discharging the prisoner. But even under this order the prisoner is not discharged. Before the discharge can become binding and obligatory it must be approved by the Governor. Under such circumstances there is no ground for saying that a prisoner is discharged by the warden of the penitentiary or the prison board. What they do is to recommend, and the prisoner is released, if released at all, by the act of the court before whom he was convicted or by the act of the Governor. The release is obtained under a judicial order of the court, sanctioned and approved by the order of the Governor of the State.

Whether the law in question, making, as it does, a radical change in the trial of criminal cases and in the management of prisoners convicted, is a wise one, is not a question for the courts,—that is purely a question for the legislative department of the government. A law in many respects similar, enacted by the legislature of Ohio, was challenged as being unconstitutional, as has been done here; but in *State ex rel.* v. *Peters*, 43 Ohio St. 629, the law was sustained. In *People* v. *State Reformatory*, 148 Ill. 413, an act in many respects similar to the one here involved came before the court, and we held the act constitutional. The ruling in that case applies here.

In conclusion, we are satisfied that no judicial power is conferred upon or exercised by the prison board or the warden of the penitentiary, but, on the other hand, the powers conferred and exercised are ministerial only.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE MAGRUDER: I dissent from this opinion. The act is unconstitutional as being a delegation of judicial power to the prison board, a body which owes its existence to executive appointment. The highest and most delicate function of the judiciary is the administration of the criminal law; and to entrust the power to fix the punishment of convicted criminals to penitentiary wardens or prison boards, who hold their positions oftentimes as rewards for political service, is to endanger and jeopardize the rights and liberty of the citizen, and the peace and good order of society. It is the duty of courts to courageously declare the law as it is, and not to busy themselves with considerations of expediency, or convenience, or sentimentality.