Miller v. The State.

## MILLER v. THE STATE.

[No. 18,274,    Filed March 8, 1898.]

CRIMINAL LAW.—*Indeterminate Sentence Law.—Verdict.—Indiana
Reformatory Act.*—A verdict simply finding the defendant guilty
as charged in the indictment and fixing his age without deter-
mining the punishment, is authorized by section 8 of the Reform-
atory Act (Acts 1897, p. 69).  *p. 609.*

SAME.—*Indeterminate Sentence Law.—Cruel Punishment.—Constitu-
tional Law.—Indiana Reformatory Act.*—Section 8 of the Reform-
atory Act (Acts 1897, p. 69), providing that in the trial of felonies,
if the defendant is found to be over sixteen years of age and less
than thirty, and he be not guilty of treason or murder in the first
or second degree, it shall only be stated in the finding of the court
or verdict of the jury that the defendant is guilty of the crime
charged, naming it, and that his age found is his true age, and that
the court trying such person shall sentence him to the custody of
the board of managers of the Indiana Reformatory to be confined
at such place as may be designated by such board for a term not
less than the minimum time prescribed by the statutes of this State
and not more than the maximum time prescribed by such statutes
therefor, to be determined by such board of managers according to
its rules and regulations, is not in conflict with section 16, article 1,
of the constitution, that cruel and unusual punishment shall not
be inflicted, and that all penalties shall be proportioned to the
nature of the offense.  *pp. 610-618.*

SAME.—*Indeterminate Sentence Law.—Trial by Jury.—Constitutional
Law.—Indiana Reformatory Act.*—The provision of the Reforma-
tory Act of 1897 (Acts 1897, p. 69), requiring the jury in the trial of
all felonies other than treason and murder in the first and second
degree, where defendant is between sixteen and thirty years of age,
simply to find the age of defendant and the crime of which he is
guilty, and requiring the court to sentence him to the board of
managers of the Indiana Reformatory, does not deprive the accused
of a jury trial in violation of section 13 of the bill of rights.  *pp.
619, 620.*

Miller v. The State.

CRIMINAL LAW.—*Indeterminate Sentence Law.—Disfranchisement.—Indiana Reformatory Act.*—The failure of the court to assess disfranchisement as part of the punishment, under the Reformatory Act, is not an error of which the defendant can complain. *p. 620.*

SAME.—*Reformatory Act.— Constitutional Law.*— The Reformatory Act of 1897 (Acts 1897, p. 69) is not in conflict with section 1, article 7, of the constitution, providing that "the judicial power of the State shall be vested in the Supreme Court, in circuit courts and in such other courts as the General Assembly may establish," nor with section 1, article 3, providing that "the powers of the government are divided into three separate departments; the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided," as an attempt to devest the judicial department of its powers and confer same upon the board of reformatory managers, as the powers conferred upon the board of managers by said act are administrative and not judicial. *pp. 620-623.*

SAME.—*Appeal by Poor Person.—Manuscript of Evidence.—Failure of Court to Furnish.*—The refusal of the court to furnish a poor person with a transcript of the evidence in the trial of a criminal cause, as provided by section 1474, Burns' R. S. 1894, after the trial and judgment, is not properly assigned as error of law occurring at the trial. *pp. 623, 624.*

SAME.—*Appeal by Poor Person.—Manuscript of Evidence.—Failure of Court to Furnish.—Remedy.*—The proper remedy for failure or refusal of the circuit court to furnish a poor person in a criminal cause with a transcript of the evidence at the cost of the county is by an application to the Supreme Court for an order requiring the court to furnish such transcript. *p. 624.*

From the St. Joseph Circuit Court. *Affirmed.*

*J. W. Talbot, J. E. Talbot* and *F. M. Jackson,* for appellant.

*W. A. Ketcham,* Attorney-General, *Thomas W. Slick* and *Merrill Moores,* for State.

McCABE, J.—The appellant was charged in the indictment with burglary and larceny, on May 3, 1897. On a trial of the charge, the jury found him guilty of burglary by their verdict, reading thus: "We, the jury, find the defendant, George Miller, guilty of burg-

lary, as charged in the indictment, and that his age is eighteen years. John Valentine, Foreman." And the following judgment was rendered upon said verdict, to wit: "And the defendant being asked if he has any legal cause to show why the judgment of the court should not be pronounced upon the verdict of the jury, stands mute, and thereupon it is considered and adjudged by the court that the defendant be, and is hereby, sentenced to the custody of the board of managers of the Indiana Reformatory or at such place as may be designated by said board of managers as guilty of the crime of burglary, and that he be confined therein for a term of not less than one year or more than fourteen years, as a punishment for said offense, according to the rules and regulations established by such board of managers, and that the sheriff of this county is charged with the execution of this sentence."

The errors assigned call in question the action of the circuit court in overruling appellant's motion for a new trial, and in refusing appellant's request to be furnished with a longhand transcript of the evidence given in said cause at the expense of St. Joseph county. The ground specified in the motion for a new trial is that the verdict is contrary to law.

The objection to the verdict would perhaps be fatal, in that it would be contrary to and unauthorized by law as it stood prior to April 1, 1897, because it does not "state  *  *  *  the amount of fine and the punishment to be inflicted." Section 1906, Burns' R. S. 1894 (1837, Horner's R. S. 1897). But it is contended on behalf of the State that the verdict is not contrary to, and is authorized by, law, to wit: Section eight of the reformatory act, approved February 26, 1897 (Acts 1897, p. 69). That act does authorize just such a verdict and judgment in such a case.

Vol. 149—39

The learned counsel for appellant contend, however, that so much of the reformatory act as authorizes such a verdict and judgment is unconstitutional. The section in question reads thus: "In all cases of felony tried hereafter before any court or jury in this State, if the court or jury find the person on trial guilty of a felony, it shall be the duty of such court or jury to further find and state whether or not the defendant is over sixteen (16) years of age and less than thirty (30) years of age. If such defendant be found to be between said ages, and he be not guilty of treason or murder in the first or second degree, it shall only be stated in the finding of the court or verdict of the jury, that the defendant is guilty of the crime charged, naming it, and that his age is that found by it or them to be his true age, and the court trying such person shall sentence him to the custody of the board of managers of the Indiana Reformatory to be confined at the Indiana Reformatory or at such place as may be designated by such board of managers where he can be most safely and properly cared for, as guilty of the crime found in such finding or verdict, and that he be confined therein for a term not less than the minimum time prescribed by the statutes of this State, as a punishment for such offense, and not more than the maximum time prescribed by such statutes therefor, subject to the rules and regulations established by such board of managers, and it shall be the duty of the board of managers of said reformatory to receive all such convicted persons, and all existing laws requiring the courts of this State to sentence such persons to the penitentiaries or prisons of this State, are hereby modified and changed as to make it the duty of such courts to sentence such prisoners to the Indiana Reformatory. The board of managers may terminate such imprisonment when the rules and requirements

Miller *v.* The State.

of such Reformatory have been lived up to and fulfilled, according to the provisions of this act."

The next section makes it the duty of the clerk of the court in which the case is tried, where there is a conviction, to send along with the commitment a record containing a copy of the indictment or information filed in the case, the name and residence of the judge presiding at the trial, the names of the jurors and witnesses serving at the trial, with a statement of any fact or facts which the presiding judge may deem important or necessary for the full comprehension of the case.

Section eleven provides that: "The said Board of Managers shall have power to establish rules and regulations under which prisoners in the Reformatory may be allowed to go upon parole outside the reformatory building and enclosure, but to remain, while on parole, in the legal custody and under control of the Board of Managers and subject at any time to be taken back within the enclosure of said Reformatory; and full power to enforce such rules and regulations to retake and imprison any inmate, so upon parole, is hereby conferred upon said Board, whose order, certified by its Secretary, and signed by its President, with the seal of the Reformatory attached thereto, shall be a sufficient warrant for the officers named in it to authorize such officer to return to actual custody any conditionally released or paroled prisoner;  *  *  * *Provided,* that no prisoner shall be released on parole until the said Board of Managers shall have satisfactory evidence that arrangements have been made for his honorable and useful employment for at least six months while upon parole, in some suitable occupation."

The twelfth section provides for certain rules by which the reformation is to be sought by the board of

managers, among which is a record in which is to be entered every fact connected with the history of every prisoner when he enters the reformatory, together with his subsequent conduct affecting his standing, and any facts or personal history which may come to the knowledge of the general superintendent officially, bearing upon the question of parole or final release of the prisoner. And the section then provides: "And it is hereby provided that whenever in the opinion of the Board of Managers any prisoner on parole has violated the conditions of his parole or conditional release, by whatever name, as affixed by the Managers, he shall, by a formal order entered in the Managers' proceedings, be declared a delinquent, and shall thereafter be treated as an escaped prisoner owing service to the State and shall be liable when arrested to serve out the unexpired term of his maximum possible imprisonment, and the time from the date of his declared delinquency to the date of his arrest shall not be counted as any part or portion of time served."

Section thirteen provides that: "It shall be the duty of the General Superintendent to keep in communication, as far as possible with all prisoners who are upon parole, and when, in his opinion, any prisoner has for one year so conducted himself as to merit his discharge, and has given evidence that is deemed reliable and trustworthy, that he will remain at liberty without violating the law, and that his final release is not incompatible with the welfare of society, the General Superintendent shall make a certificate to that effect to the Board of Managers, and, after written notice to all of the Managers, the Board shall, at the next meeting thereafter, consider the case of the prisoner so presented; and when said Board shall find that said prisoner has so done, he shall be entitled to his final discharge."

Miller v. The State.

It is contended on behalf of appellant, first, that these provisions violate section sixteen of article one of the bill of rights in our constitution providing that "cruel and unusual punishment shall not be inflicted. All penalties shall be proportioned to the nature of the offense." Section 61, Burns' R. S. 1894 (61, R. S. 1881).

Frequent attempts have been made in this court to reverse judgments in criminal cases because the punishment adjudged was cruel and excessive. But it has invariably been held that, no matter how harsh and severe it might seem to this court, yet, if it was within the limits prescribed by statute for the punishment of such crimes, this court could not interfere nor reverse the judgment. Siberry v. State, post, 684; Ledgerwood v. State, 134 Ind. 81, 91; McLaughlin v. State, 45 Ind. 338; McCulley v. State, 62 Ind. 428; Shields v. State, ante, 395. In none of these cases was the validity of the statute questioned.

In the last case cited this court said: "It is also urged as a reason for reversal that the punishment is excessive. The only limitations to the power of the legislature to fix the punishment for crimes are those imposed by the constitution of this State and the United States. Section sixteen, article one, of the constitution of this State, which provides that cruel and unusual punishments shall not be inflicted, has reference to the statute fixing the punishment, and not to the punishment assessed by the jury within the limits fixed by the statute. If the statute fixing the punishment is not in violation of said section of the constitution, then any punishment assessed by a court or jury within the limits fixed by the statute cannot be adjudged excessive by this court, for the reason that the power to declare what punishment may be assessed against those convicted of crime is not a judicial power, but is a legislative power, controlled only

by the provisions of the constitution." The question, then, is whether the provisions of the act quoted authorize the infliction of cruel and unusual punishment. The legislation was an attempt on the part of the legislature to obey the mandate contained in section eighteen, article one, of the constitution, demanding that: "The penal code shall be founded on the principles of reformation, and not of vindictive justice." And yet the duty to carry out one provision of the constitution does not authorize the legislature to violate another. The question still remains: Does the statute inflict cruel and unusual punishment? The appellant was convicted of burglary and the punishment prescribed therefor by the criminal code of 1881 was imprisonment in the state prison for any determinate period, at the discretion of the jury, of not less than two years and not more than fourteen years. Section 2002, Burns' R. S. 1894 (1929, R. S. 1881).

Under that statute, if the evidence had shown that appellant was guilty of breaking into an old outhouse, with intent to commit a felony, though he found nothing therein on which to commit the felony, and though the outhouse was practically worthless, yet the jury, in their uncontrollable and unbridled discretion, could send him to the state prison for fourteen years and he would be without remedy.

Certainly, that is more cruel punishment than that provided by the reformatory act. Under the law prior to that act, when the ponderous iron doors of the prison close on the convict it not only shuts him in, and shuts out the bright angel of liberty, but it also shuts out of the convict's heart all hope, which is the anchor of the soul, because in the absence of such legislation he is utterly powerless by any amount of good conduct or penitence to assuage or mitigate the severity of his punishment. Is it at all strange that,

with liberty and hope gone, the convict's heart should break, or that he should, in his helpless condition, settle down to the belief that society was his bitter-hating enemy; and thus brooding over the subject through the long years of his prison toil without recompense, and tears all in vain, is it at all strange that he should, at the expiration of his term, come out of prison the bitter-hating enemy of society? Clearly not. It was to remedy this manifest evil to society and to the criminal classes themselves that the legislation in question was enacted. So that, when the convict is brought within the prison walls, if his crime be not treason or murder in the first or second degree, the hope of liberty is not shut out of his heart, the anchor of his soul is not taken away, but society whispers in his ear the brotherly message, through the statute in question that "the restoration of your liberty is largely in your own hands." "Your own good conduct and reformation may restore you to liberty and to society as a useful citizen, even before you have served the minimum or shortest time fixed in the criminal code for the punishment of your crime, namely, in one year after your imprisonment begins," because the minimum term of imprisonment prescribed by the criminal code for a large majority of the felonies falling within the reformatory act is two years and some three years. The minimum term in a small number is three years, and in still smaller number it is one year, and in a very few cases it is six months. And we are gravely told by appellant's learned counsel that this act violates the constitution, in placing it within the convict's power by good conduct, fidelity, and trustworthiness while on parole, to mitigate the severity of his punishment by being restored to liberty conditionally, and, it may be, finally discharged, long before the very shortest term he would be com-

pelled to serve under the old law, because such provision is cruel punishment.

To say so would require us to turn back the hands on the dial of human progress a hundred years. To call these provisions "cruel punishment" is to mock at all humanizing efforts. It is to cast a stigma on all our benevolent institutions, which stand as noble monuments of the goodness of the human heart. In short, it is to deny the fatherhood of God and the brotherhood of man.

Appellant's contention, substantially, though not in words, that that part of the act authorizing a judgment for the maximum term of imprisonment specified in the section of the criminal code under which he was convicted must be looked to alone in determining the question whether the punishment prescribed is cruel or not, is not tenable. The whole of the act bearing on the question of punishment must be looked to in construing the different parts. In upholding the constitutionality of a similar act of the Illinois legislature, the supreme court of that state, in the course of a very learned opinion, said: "We think that the judgment and *mittimus* in this case must be read and interpreted in the light of and under the restrictions imposed by the statute upon which they are based. That statute provides, that although the sentence is a general sentence to imprisonment, yet that 'such imprisonment shall not exceed the maximum term provided by law for the crime for which the prisoner was convicted and sentenced.' This provision, and others of like import, being read into the judgment and *mittimus*, we think that it should be regarded that the judgment and commitment in this case were for twenty years, that being the maximum term provided by law for the crime of burglary." *People, ex rel., v. State Reformatory*, 148 Ill. 420, 36 N. E. 78.

In *Woodward* v. *Murdock*, 124 Ind. 437, involving the
validity and construction of the act of 1883 relating to
shortening the prisoner's term by deductions there-
from, this court said, on page 444, that: "The law
allowing him credit for good time entered into the
judgment as if written therein, and, therefore, by the
very language of the judgment the appellant's time
expired on the 13th day of December, 1889." And so
here the reformatory act may be read into the judg-
ment wherever necessary to make the meaning of the
judgment clear or make it effectual.

In construing this provision of the constitution in
*Hobbs* v. *State*, 133 Ind., on pp. 408 and 409, this court
said: "The second point, that the act is in violation
of the provisions of the constitution, that 'cruel and
unusual punishment shall not be inflicted,' has the
merit of possessing some originality; but the position
assumed seems to be without authority to support it.
We have been unable to find but a single instance in
which this provision of the constitution has been in
question before this court, and then the question
was regarded as possessing no merit, and was disposed
of without serious consideration. This provision of
the constitution is found also in the constitution of the
United States in the same words, and Mr. Story, in
his work on the constitution, says, 'it is an exact
transcript of a clause in the Bill of Rights framed at
the revolution of 1688.' He says, further, that 'the
provision would seem to be wholly unnecessary in a
free government, since it is scarcely possible that any
department of such a government should authorize
or justify such atrocious conduct. It was, however,
adopted as an admonition to all departments, * * *
to warn them against such violent proceedings as had
taken place in England in the arbitrary reigns of the
Stuarts.' * * * The word 'cruel,' when consid-

ered in relation to the time when it found place in the Bill of Rights, meant not a fine or imprisonment, or both, but such as that inflicted at the whipping-post, in the pillory, burning at the stake, breaking on the wheel, etc. The word, according to modern interpreta- tion, does not affect legislation providing imprison- ment for life or for years, or the death penalty by hanging or electrocution. If it did, our own laws for the punishment of crime would give no security to the citizen. Neither is punishment by fine and impris- onment 'unusual.' " The same doctrine was applied to a similar constitutional provision, in upholding the constitutionality of the reformatory act of Illinois, in all material respects like our own, in the case of *People, ex rel.,* v. *State Reformatory, supra;* also in *George* v. *People,* 167 Ill. 447, 47 N. E. 741.

The only plausible objection that could be urged in reason to the act, as to the character of the punish- ment when mitigated as provided in the act, is that it is too mild, instead of being cruel. That, however, is a legislative and not a judicial, question.

Nor do we think the act conflicts with that clause of section sixteen of the bill of rights requiring the pun- ishment to be proportioned to the nature of the of- fense. The supreme court of Illinois on that point says: "We think that from the fact that the statute here in question imposes the maximum term of imprisonment provided by law for the crime for which the prisoner is convicted, it does not fol- low that such statute is in violation of the con- stitutional requirement that 'all penalties shall be proportioned to the nature of the offense." *Peo- ple, ex rel.,* v. *State Reformatory, supra.* The same doctrine was in effect held in *George* v. *People, supra.* We therefore hold that the act does not violate section sixteen of the bill of rights.

Miller v. The State.

It is also contended that the act violates section thirteen of the bill of rights, in that it does not allow the defendant a trial by jury, because, as is contended, it makes the punishment depend upon the determination of a board of managers, arrived at in an *ex parte* manner, and upon hearsay evidence, in a county other than that in which the offense was committed. But the trial and finding of the guilt or innocence of the accused are authorized to be by a jury, in the county where the offense is alleged to have been committed. But, because the jury are not allowed to fix the amount of the punishment which is to be inflicted, it is contended that the reformatory act deprives the accused of a jury trial, in violation of said section thirteen of the bill of rights. This very objection to a similar act, under a similar constitutional provision in the constitution of Illinois, in *People, ex rel.*, v. *State Reformatory, supra*, at p. 422, was held not good. It was there said: "Nor is it true that a prisoner on trial for burglary and larceny, or for any other violations of the criminal law, has a constitutional right to have the quantity of punishment fixed by a jury. At common law the jury either returned a special verdict, setting forth all the circumstances of the case and praying the judgment of the court thereon, or a general verdict of guilty or not guilty. The punishment was fixed by the court, and governed by the laws in force. (Blackstone's Com., Book 4, 361.) * * * The constitutional right of trial by jury is limited to the trial of the question of guilt or innocence, and we think there can be no question of the validity of the sections of the statute to which we have made reference in this connection." The supreme court of Illinois again decided the same way. *George* v. *People, supra*. We therefore conclude that the act does not deprive the defendant of a jury trial, in violation of the constitution.

The only difference between the procedure in felonies under the reformatory act and that under the criminal code prior thereto, is that the jury only find whether the defendant is guilty, and his age, but do not, as before, also fix the punishment. The judge now fixes not only the punishment as to imprisonment, but as to all other penalties prescribed by the section of the criminal code with the violation of which the defendant was charged.

In this case, the court, in addition to the imprisonment, ought to have adjudged as part of the punishment that appellant be disfranchised and rendered incapable of holding any office of trust or profit for some determinate period.

In fixing the imprisonment the court has no discretion, but must adjudge the same as fixed by the reformatory act. The amount of fine or length of disfranchisement is to be determined and fixed by the court in its discretion, within the limits fixed by the statute prescribing the punishment for the particular offense.

No question, however, has been made as to the failure of the court to assess disfranchisement as a part of the punishment. And it is settled that such failure is not an error of which appellant can complain. *State v. Arnold,* 144 Ind. 651, 659, and authorities there cited.

It is next contended that the act violates section one of article seven of the constitution, providing that "The judicial power of the state shall be vested in a supreme court, in circuit courts, and in such other courts as the general assembly may establish." And that it violates section one, article three, providing that "the powers of the government are divided into three separate departments; the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the func-

tions of another, except as in this constitution express-
ly provided."

Appellant's contention on this point is thus stated
by his counsel: "It attempts to confer judicial powers
upon the board of managers and general superintend-
ent of said reformatory, by permitting them to con-
sider and determine whether or not he has ever before
been convicted of a felony; whether or not the jury
who found the prisoner's age were or were not mis-
taken; what his personal history has been; whether
or not it has been good or bad; and what his conduct
has been in the reformatory; and, taking these things
into consideration, determine the length of time for
which the prisoner shall be confined or punished."

None of these considerations have anything what-
ever to do with the defendant's guilt, nor with the
question as to what judgment should be pronounced
upon a finding or verdict that he is guilty of the crime
charged in the indictment, nor with the amount or
quantity of punishment to be inflicted on him by the
judgment.

The constitution of Illinois, as to the division of the
powers of government, is precisely like ours, and the
supreme court of that state, in *George* v. *People, supra*,
as to the point now in question, said: "It is also
claimed that the act is unconstitutional because it at-
tempts to divest the judicial department of certain
of its powers and confer those powers on the execu-
tive department, in violation of article three of the
constitution." After quoting that article, the court
proceeds: "It may be conceded that it is beyond
the power of the legislature to invest ministerial offi-
cers with judicial powers. If the act therefore con-
fers upon mere ministerial officers judicial powers it
cannot be sustained.   *   *   *   While it might be a
difficult matter to draw a line of distinction between

judicial and ministerial functions which would fit every case which might arise, yet we think it can be determined from the authorities, without much uncertainty, to which the duties conferred on the prison board and the warden properly belong." Then the court goes into an exhaustive review of the authorities upon that subject, the statute there and ours being practically the same, and the court then says: "After due consideration we have reached the conclusion that it does not confer judicial power on the warden or the prison board." To the same effect is the *People, ex rel.,* v. *State Reformatory, supra.* The same conclusion was reached by the supreme court of Ohio in upholding a reformatory act of that state, similar to our own, in *State* v. *Peters,* 43 Ohio St. 629, 650; *Commonwealth* v. *Brown,* 167 Mass. 144, 45 N. E. 1; *Conlon's Case,* 148 Mass. 168, 19 N. E. 164. Both of the latter cases uphold the constitutionality of a similar statute in Massachusetts. In the case in 167 Mass. it is said: "It is suggested, again without argument, that St. 1895, c. 504, under which the defendant is sentenced, is unconstitutional. This statute requires the sentence in certain cases to be for a term of not less than two and one-half years, and not more than a maximum fixed by the court, and not longer than the longest term fixed by the law for the punishment of the offense. Such a sentence is in effect a sentence for the maximum fixed by the court, unless a permit to be at liberty is issued as provided by section two."

So that the judgment of guilty and sentence is complete and effective, so as to warrant and require the convict to remain in prison to the end of the maximum term fixed in the judgment of conviction, unless ministerial or administrative officers, the board of managers, acting under the authority of the act, shall shorten the term of service in case a reformation of the convict is effected.

The power to do this is not judicial power, but is a purely ministerial or administrative power. It is no more the exercise of judicial power than the power of the Governor to "grant reprieves, commutations, and pardons, after conviction." Const., article 5, section 17. Nor is it the exercise of the pardoning power. " 'Pardon' is remission of guilt; 'amnesty,' oblivion or forgetfulness." Anderson's Law Dictionary, 745. The act of the board only shortens the term prescribed by the sentence and leaves the conviction of guilt un-affected.

The act of the board of managers in shortening the term of imprisonment is the exercise of the same kind of power authorized by the act of 1883, section 8238, Burns' R. S. 1894, in which it is provided that for the first year of good conduct of the convict he was allowèd a credit of one month, two, three, and four months for the second, third and fourth years respectively, and five months additional for each succeeding year. These credits, thus shortening very materially, the term of the sentence, are given not by the court, nor by the Governor under his power of pardon, but purely and simply by administrative officers, the prison board. And, although such laws have been in force in this State for over a quarter of a century, it has never been suggested that they either conferred judicial powers on administrative officers, or interfered with the judgments of courts or the pardoning power of the Governor. On the contrary, the validity of such legislation was upheld by this court in *Woodward* v. *Murdock*, *supra*. We therefore conclude that the act does not violate the section of the constitution referred to.

The only other error alleged is the court's refusal to furnish appellant with a longhand manuscript of the evidence, he having made a proper showing, bringing

himself within the provisions of the statute requiring the court so to furnish such manuscript at the expense of the county. But such refusal was after the trial and judgment, and therefore, the court's action did not affect the trial. The seventh ground for a new trial specified in the criminal code is "error of law occurring at the trial." This error did not occur at the trial. Nor does the error fall within any of the other eight grounds specified in the criminal code for a new trial. Nor does it furnish any ground for a distinct assignment of error in this case. We have no means of knowing that the evidence if it were here, would not abundantly sustain and uphold every act of the court leading to the judgment, except the unsupported statement of his counsel. The presumption of law is that the judgment of the trial court was right until that is overcome by a showing in the record. The remedy of the appellant was an application to this court for an order requiring the circuit court to furnish the transcript at the expense of the county on a proper showing.

Judgment affirmed.

### DISSENTING OPINION.

HOWARD, C. J. (Dissenting.)—I am unable to concur in the conclusion that the Indiana Reformatory Act, as interpreted by the majority of the court, is constitutional. That act, as construed by the court, requires that the appellant, for the crime of burglary, should receive an indeterminate sentence of imprisonment, not to be for less than two years nor more than fourteen years. The best defense that can be made of the legality of such a sentence is that it is, in effect, a sentence of imprisonment for fourteen years. Yet it must be plain that the legislature did not intend this result, else it would have said so, and omit-

ted all reference to the minimum time.    The clear
meaning of the act, if indeed, it does provide for an
indeterminate sentence, is, rather, that the sentence
should be for some time more than two years, and less
than fourteen years, such time to be finally deter-
mined by the board of managers of the reformatory.
That, however, would be to substitute for the judg-
ment of the court trying the case the judgment of the
administrative officers appointed to carry out the
sentence.    Such an interpretation of the act makes it
a plain invasion of the constitutional functions of the
judiciary.    If, on the other hand, it should be con-
ceded that the sentence is, in effect, a sentence of im-
prisonment for the maximum period of fourteen years,
then we have the anomaly that there is no gradation
in the crime of burglary; that the ragged boy who
lifts a latch and steals a loaf of bread for his suffering
mother, brothers, and sisters is to receive his four-
teen years, quite the same as the crime-hardened rep-
robate who breaks into a banking house and carries
off the life earnings of aged and helpless depositors.
Such a construction, however, cannot be in harmony
with the provisions of the constituion, that "All pen-
alties shall be proportioned to the nature of the
offense."

As I look upon it, the law may be upheld by an
obvious construction, and one in harmony with every
provision of the constitution; and, if this can be done,
it is, of course, our duty to give to the act such con-
struction.    The act provides for confinement in the
reformatory "for a term not less than the minimum
time prescribed by the statutes of this State, as a pun-
ishment for such offense, and not more than the max-
imum time prescribed by such statutes therefor."    Is
it not a reasonable interpretation of these words to

say that their meaning is, that the court, after hearing
and considering all the facts and circumstances,
should fix a definite term of imprisonment, somewhere
between the minimum and maximum times prescribed
by the statutes? That would be quite in harmony
with the practice under the law as it was formerly
understood. The statute in relation to burglary pre-
scribes as a part of the punishment that the convicted
person "shall be imprisoned in the state prison not
more than fourteen years nor less than two years."
No one ever knew a court, under this statute, to say
to a defendant, "You have been convicted of burglary,
and you will be imprisoned therefor not more than
fourteen years nor less than two years." It was, on
the contrary, well understood that, while the statute
made the punishment indeterminate, between certain
limits, the court, in its sentence, must name a de-
terminate term of imprisonment within such limits, so
that, in every case, as required by the constitution,
the penalty "shall be proportioned to the nature of
the offense." So interpreted, the act of 1897 would
be in harmony with the constitution, and would also
serve to accomplish all the beneficial designs intended
by the legislature. As interpreted by the court, the
act seems to me to make a mere figure-head of the trial
judge, and to transfer the constitutional discretion and
judgment of the judiciary to officers of the administra-
tive department of the government; punishing also
the culprit, not according to the degree of the offense
of which he is convicted, but according to his conduct
in the reformatory and the probability of his receiv-
ing remunerative employment after he gets out.

Miller v. The State.

## DISSENTING OPINION.

JORDAN, J.—While I yield due respect to the majority opinion of this court, still I cannot concur therein so far as it sustains the constitutional validity of the provisions of the act of 1897 herein involved, which require the court, without exercising any judicial discretion whatever, to impose an indeterminate sentence on a person convicted of a felony. Or which, rather, command the court, in effect, to turn the convicted person over to the custody of the board of managers of the Indiana Reformatory Prison, there to be confined as provided, not beyond the maximum limit of imprisonment fixed by the statute defining the offense. Article three of our constitution distributes the powers of the government into three separate departments, the legislative, the executive, including the administrative, and the judicial, and denies the right of any person charged with official duties under any one of these departments to exercise any of the functions of another, except as in the constitution expressly provided. Any attempt to deprive one department of its rights and powers under the constitution must be carefully watched and guarded, and no encroachment of one upon the powers of the other can be permitted; otherwise, the constitutional rights of the citizen may be frittered away, and the maintenance of a republican form of government be impaired.

The statute defining the offense of which the prisoner in the case at bar was convicted, provides, as a part of the punishment to be inflicted, imprisonment for a term not less than two nor over fourteen years. The law involved recognizes the existence of the provisions of this penal statute, but nevertheless proceeds to devest both the jury and the court of the power of exercising judicial functions, in determining,

between the minimum and maximum limits, what the term of imprisonment shall be. Not only are the trial, conviction, and sentencing of a person convicted of the commission of a crime, a judicial duty, but also, in my opinion, is the right to assess the punishment, and thereby fix the term of imprisonment provided, within the limits of the statute, a judicial function, of which the court wherein the accused is tried, cannot be deprived by the legislature.

The provisions of the various sections of our penal code relating to crimes classified as felonies by the law are expressly recognized by the statute in question as still existing; especially is this true in regard to the limits of imprisonment. Certainly, the right to apply the law as it then exists is the peculiar province of the court or jury in the trial of a criminal cause. Consequently, the right to determine and decide as to the extent to which a convicted person shall be punished by imprisonment under and within the limits of an existing law cannot be wrested from the court and jury and lodged elsewhere. The provisions of the statute under consideration wholly rob the court of all judicial discretion in regard to the term of imprisonment, and in imperative language require it to sentence the prisoner to the custody of the board of managers of the reformatory, for an indefinite term.

 While the constitutional validity of a statute which simply lodges in the court, where a person accused of crime is tried, the power of assessing the punishment, instead of leaving it with the jury trying the case, may be conceded; but when a law goes beyond this, and deprives both the jury and the court of this power, as does the one in dispute, certainly it must be held to infringe upon the constitutional rights of the accused, which he has, to demand, in the event of his conviction,

that his punishment be judicially determined under the existing law, which he has been convicted of violating, and which prescribed the penalties for its violation. The trial cannot be said to have ended until his punishment is determined and adjudged by the court. A statute of the state of Michigan which did not go to the extent of the one here involved, leaving, as it did, the question of an indeterminate sentence to the discretion of the court, was held to be invalid. *People* v. *Cummings*, 88 Mich. 249, 50 N. W. 310. A similar statute in Ohio, which also made the question of imposing an indeterminate sentence one of judicial discretion, was upheld. *State* v. *Peters*, 43 Ohio St. 629, 4 N. E. 81.

The decisions of the supreme court of Illinois, cited in the majority opinion, whereby the validity of a law similar in some respects to the statute now in controversy was sustained, are, in my opinion, neither satisfactory nor convincing in their reasoning. The effect of these decisions is also impaired by the fact that they were rendered by a divided court.

That the validity of a law providing for the parole, under prescribed rules and regulations, of prisoners who have been sentenced for a definite term of imprisonment, before the expiration of their terms, may be sustained, I think, may be conceded; but that is not the vital question presented for decision in the case at bar.

The feature in the statute which leads me to condemn it as antagonistic to the constitution is that which unquestionably devests the judiciary of its rights and powers, to a certain extent; and to this extent, and in this respect, the law, in my judgment, is invalid, and cannot be sustained; and this must be true without regard to the question of whether it invests some ministerial board or person with judicial

functions. The doctrine is universally affirmed that courts, being a co-ordinate branch of the government, are not, within their sphere, subject to legislative control. Cooley, Constitutional Limitations, 114 and 116. But, under this statute, the court, in respect to the term of imprisonment, is wholly controlled by the will of the legislature. It is not permitted to decide what, in its judgment, under the circumstances in the particular case, ought to be the term of imprisonment within the limits provided by law. The man who is convicted of the theft of a plug of tobacco of the value of ten cents must be turned over to the prison officials to be restrained of his liberty for the same period as one who has committed the heinous offense of stealing his neighbor's hogs or sheep of the value of $24.00. The court can exercise no discretion and decide in accordance with the dictates of his own judgment. This is so evident that a mere reading of the statute is sufficient to condemn it in this respect.

It is insisted that the legislature has the power to provide that the term of imprisonment for the crime of burglary shall be fourteen years and no less, and that the judgment of the court in the case at bar in effect inflicted the maximum term of imprisonment, which was fourteen years. While the power of the legislature to declare that the punishment for the crime of burglary shall be imprisonment for the term of fourteen years in the state prison, and no less, may be conceded, but how, or in what manner can this concession lend any support to sustain the validity of the statute? As heretofore stated, the law under which appellant was convicted extends the limitation of imprisonment from two to fourteen years, and, if it can in reason be said that the trial court in this case simply inflicted the maximum punishment provided by the law defining the offense of burglary, then it certainly may be

asserted that in doing so the court responded solely to the command of the statute in controversy, and not, under the circumstances in the particular case, to the dictates of its own judgment as to what the term of imprisonment should be within the limitation provided by an independent statute.

The law may be said to be crude and half-baked in its provisions, and possibly open to objections which have been urged against it, that it will in some cases result in great injustice. While these are matters which do not address themselves to a court, still, as the law is to be upheld, they may be mentioned as proper for legislative consideration in the future.

As to whether, in the event a minor is convicted, imprisonment for his offense in the county jail may be substituted for imprisonment in the state prison, as provided by section 1833, R. S. 1881, is a question which, under the act in controversy, is left to judicial construction. Equally so is the question as to whether a fine and disfranchisement shall be adjudged as a part of the punishment by the act, where the same are provided as a part of the punishment by the penal statute of which the accused person has been convicted of having violated.

This law is certainly more sweeping in its provisions than any other on the same subject enacted by sister states which has come under my observation. It seems to be impressed with the impracticable and sentimental idea of certain theorists who believe that a greater justice will be meted out to the convict, and his condition bettered, by incarcerating him within the walls of a prison for an indeterminate period, without any regard to the circumstances surrounding the offense of which he has been convicted, there to remain until he can secure his liberty by ingratiating himself into the good graces of the board of parole.

I have endeavored somewhat briefly to state the

reasons which I consider the cardinal ones for holding the law invalid, and, in my opinion, it should be so adjudged, without any regard to the question of expediency or the results which may follow.   These are questions which as a general proposition should exert no control over courts in reaching a conclusion in a case involving constitutional rights.