ELLIOTT *v.* DEPARTMENT OF CORRECTIONS.

1. HABEAS CORPUS—PETITION FOR MANDAMUS—SUA SPONTE CERTIORARI.

    Petition for writ of mandamus to compel department of corrections to discharge plaintiff from custody in prison is considered as an application for habeas corpus for purpose of deciding an important question of statutory construction, the Supreme Court, *sua sponte,* issuing ancillary writ of certiorari to circuit court which had committed plaintiff (CL 1929, § 16748; CL 1948, § 769.1 *et seq.*).

2. CRIMINAL LAW—GOOD-TIME ALLOWANCE.

    Good-time allowance is settled by the department of corrections.

3. SAME—CORRECTION OF SENTENCE—DISCHARGE—GOOD-TIME ALLOWANCE.

    Person who pleaded guilty to robbery of a bank in 1930 and was sentenced for life without a minimum sentence being indicated would not be entitled to discharge even if subsequent order "correcting" the previous sentence by imposing a sentence of "not less than 30 years nor more than 40 years from and after June 30, 1930" were valid, where minimum term has not yet elapsed and record fails to disclose how much good-time allowance the convict is entitled to, if any (CL 1929, § 16748).

---

REFERENCES FOR POINTS IN HEADNOTES
[2, 3] 41 Am Jur, Prisons and Prisoners §§ 41–45.

4. SAME—INDETERMINATE SENTENCE—STATUTES.

The indeterminate sentence law must be construed in harmony with other existing criminal statutes (CL 1948, § 769.1 *et seq.*).

5. SAME—LIFE SENTENCE—INDETERMINATE SENTENCE.

There can be no minimum sentence provided, where a life sentence is imposed under a statute carrying a penalty of imprisonment for life or any term of years, the indeterminate sentence law being inapplicable (CL 1929, § 16748; CL 1948, § 769.1 *et seq.*).

6. SAME—LIFE SENTENCE—INDETERMINATE SENTENCE.

Prisoner who is serving life sentence for robbery of a bank, to which charge he had pleaded guilty, was not entitled to discharge because of subsequent sentence for term of years to "correct" first sentence imposed, since first sentence was a valid sentence and carried no minimum term, the indeterminate sentence law being inapplicable (CL 1929, § 16748; CL 1948, § 769.1 *et seq.*).

Mandamus by Sylvester Elliott to compel the Michigan Department of Corrections to release him from prison where he was serving life sentence, the propriety of which has been brought into question. Court treats petition as one for habeas corpus and issued, *sua sponte,* ancillary writ of certiorari to Antrim Circuit Court. Submitted September 7, 1955. (Calendar No. 46,165.) Writ denied December 1, 1955.

*Sylvester Elliott, in propria persona.*

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for defendant.

BOYLES, J. This is an original proceeding in this Court wherein Sylvester Elliott, *in propria persona,* has filed a petition here for mandamus to compel the defendant Michigan department of corrections to discharge him from custody in the State branch

prison at Marquette.  Because an important question of statutory construction is involved, we consider it as a petition for habeas corpus.  An order has been entered directing said defendant to show cause why the writ should not issue.  At the same time, we issued, *sua sponte,* an ancillary writ of certiorari directed to the circuit court for Antrim county, to return here the proceedings leading to the life sentence imposed upon Elliott, by that court.  The return to said writ by the circuit judge forms the basis for the defendant's answer and its return to the order to show cause why mandamus should not be granted. Elliott has filed a reply thereto, and the matter has been submitted on the motion calendar, on typewritten records which have been printed as appendixes in the printed brief filed by counsel for the defendant.

On June 3, 1930, at a session of the circuit court held in Antrim county, Elliott pleaded guilty to an information charging robbery of a bank.*  The plea having been accepted, the statute then provided that he should, for such felony, "be punished by imprisonment in the State prison for life or any term of years."  On June 13th, Elliott was sentenced to life imprisonment in the State prison at Marquette.†  The question here for decision is whether this sentence is still in effect, in the light of subsequent proceedings and the claims therein made by this petitioner.

In August, 1950, Elliott filed in the sentencing court a motion for leave to file a delayed motion for a new trial, alleging lack of legal counsel and various

---

* CL 1929, § 16748, re-enacted in substance as section 531 of the penal code (CL 1948, § 750.531 [Stat Ann 1954 Rev § 28.779]).

† At the same time Elliott's brother Fred and 2 others also pleaded guilty to the same charge and were sentenced to life imprisonment. Fred Elliott's petitions for habeas corpus and ancillary certiorari were denied by this Court (*In re Elliott,* 315 Mich 662), and certiorari was denied by the United States supreme court, *Elliott v. Michigan,* 330 US 841 (67 S Ct 981, 91 L ed 1287).

other grounds. He also filed a motion to vacate sentence, quash information, and for new trial, giving various reasons; and also a petition for a writ of *habeas corpus ad testificandum*. Hearing was held in open court on these several motions, testimony taken and the motions denied. No appeal was taken. During the next 2 years Elliott filed numerous petitions in the sentencing court to vacate sentence, for habeas corpus, new trial, and finally for mandamus. They were denied and no appeals were taken. However, in March, 1952, this Court, on recommendation of the solicitor general, entered an order remanding the entire matter to the circuit court to hold hearing, take testimony, if necessary, and pass upon all of Elliott's several petitions. In June, 1952, the circuit judge filed a return here, attaching a copy of an order denying all of Elliott's pending motions. Thereupon this Court, upon due consideration, entered an order denying a petition for habeas corpus which Elliott had filed here.

Shortly thereafter Elliott filed in the sentencing court other motions for a new trial, for *habeas corpus ad testificandum,* and for appointment of counsel, raising constitutional questions. During several adjournments Elliott continued to file further "papers," for "allowance of a supplemental brief," "allowance of witnesses," et cetera. Elliott's petitions and motions steadily accumulated. The gist of Elliott's claims seems to have been that his sentence for life was "unwarranted by law," and void. Finally, on December 3, 1952, with counsel for both the State and the petitioner present, the sentencing court announced at a hearing that he would make an order "correcting the sentence imposed on June 13, 1930 * * * to show that the defendant Sylvester Elliott be confined in the State prison * * * for a period of not less than 30 or

more than 40 years." The court signed an entry in the court journal to that effect, as follows:

"It is hereby ordered that the sentence imposed on the respondent on June 13, 1930 be corrected to read as follows: It is ordered and adjudged by the court now here that the respondent, Sylvester Elliott, be confined in the State house of correction and branch prison at Marquette for a period of not less than 30 nor more than 40 years, from and after June 30, 1930."

The circuit judge, in coming to that decision, did not directly grant any of the pending motions or petitions theretofore filed by Elliott; none of which apparently sought such an order.

Elliott continued to file "papers" in the circuit court—petitions for "writ of attachment," *habeas corpus ad testificandum,* admission to bail, new trial on newly-discovered evidence, and for the parole board to give him a hearing on construing his new sentence.

With all these matters before him, the circuit judge notified the attorney general that hearing on the various motions filed by Elliott had been set for June 22, 1953, and suggested that the attorney general consider intervening in the cause "in order that the entire problem may be threshed out," and at the same time the circuit judge stated that he had since seriously questioned the right of the court to change the sentence imposed by his predecessor.

On June 3, 1953, the attorney general and the prosecuting attorney filed a motion in said court to set aside the circuit judge's order announced on December 3, 1952 ("correcting" the sentence imposed on June 13, 1930), on the ground that the court lacked power so to "correct" such a sentence or to impose another one.

To such motion Elliott responded by filing a document captioned "answering brief," challenging the

authority of the attorney general to intervene in the matter. Meanwhile, on June 5, 1953, Elliott had filed a petition in this Court for an order restraining the attorney general, members of his staff, and the department of corrections, from any "interference" with the circuit judge's order of December 3, 1952, "correcting" the life sentence of June 13, 1930, and substituting therefor a sentence of 30 to 40 years. In that petition Elliott contended, *inter alia*, that the order of December 3, 1952, had become *res judicata* by virtue of the fact that no appeal was taken therefrom, that he had been convicted without due process of law, that the department of corrections had illegally set aside the order of December 3, 1952, and he prayed that the circuit judge be ordered to dismiss all pending motions of the attorney general.

This Court denied Elliott's petition for a restraining order, and the hearing in circuit court proceeded according to schedule, Elliott being represented there by counsel. The circuit judge granted the motion of the attorney general to set aside and vacate the order of December 3, 1952. A formal order to that effect was entered in the journal on July 6, 1953. It nullified the new sentence of 30 to 40 years, and in effect reinstated the original life sentence imposed on June 13, 1930.

It is obvious from the foregoing recital of the many "papers" which Elliott filed in the sentencing court and here, and the hearings held thereon, that nothing was left undone to give Elliott every opportunity for a day in court to hear his claims. In 1953 and 1954, he continued to file motions to vacate sentence, quash information, complaint and warrant, claiming infringement on constitutional rights,[*] and an invalid sentence.

---

[*] No constitutional question has been raised here, in the instant case.

·Finally, on January 12, 1955, the circuit judge, at the request of the State's solicitor general, conducted a hearing in open court and, in effect, denied Elliott's motions and petitions, this Court having taken jurisdiction.

Notwithstanding all of the confusion indicated by the foregoing matters, the question here for decision, in the case now before us, is this: Did the circuit judge have the authority, on December 3, 1952, to set aside the life sentence imposed on Elliott on June 13, 1930, and sentence Elliott to the State branch prison at Marquette for "not less than 30 nor more than 40 years, from and after June 30, 1930"? It should be noted again that the only matter now before us is a petition for a writ to compel the department of corrections to discharge Elliott from custody. The only ground on which the writ is sought is that the trial court, on July 6, 1953, had no authority to enter the order granting the motion of the attorney general, or to set aside its order entered December 3, 1952, which had resentenced Elliott to imprisonment for 30 to 40 years, after setting aside Elliott's original life sentence imposed on June 13, 1930.

Even if the court's order entered December 3, 1952, imposing a new sentence of 30 to 40 years beginning June 30, 1930, should be upheld, the question of good-time allowance might stand in the way of immediate discharge. Without good-time allowance, his minimum sentence of 30 years beginning June 30, 1930, would not expire until June 30, 1960. Good-time allowance is settled by the department of corrections, and the record here does not disclose how much good-time allowance Elliott may be entitled to, if any. Without it, mandamus would not lie in any event, at this time, to compel the department of corrections to discharge him from custody.

However, decision may be bottomed on another ground, in order that we may determine whether

Elliott is now serving a life sentence, or a sentence with a minimum of 30 years and a maximum of 40. The answer to that question depends primarily upon whether the court had the authority, on December 3, 1952, to set aside the life sentence and impose a new sentence of 30 to 40 years. Necessarily involved in that question is whether, under the indeterminate sentence law, Elliott's original life sentence, imposed on June 13, 1930, is still valid, and whether it thus controls decision here in this proceeding.

To recapitulate—on December 3, 1952, Elliott's life sentence had been vacated by the circuit judge on the ground that in imposing a life sentence in 1930 the judge's predecessor had failed to comply with the indeterminate sentence law, which Elliott now contends required the court to fix and determine both a minimum and maximum term of imprisonment, even though the maximum be for life; and that therefore the court properly "corrected" the life sentence to read not less than 30 and not more than 40 years, "from and after June 30, 1930." That is the order upon which Elliott relies.

Consequently, Elliott challenges the validity of the order made by the court on July 6, 1953, upon motion of the attorney general, following a hearing in open court, whereby the order of December 3, 1952, was vacated and set aside by the circuit judge on the ground that he had erred in making it, under the indeterminate sentence law. It is upon this order of July 6, 1953, that Elliott now directs his attack. It should also be noted here, that the statute, under which the life sentence was imposed in 1930, expressly provides that the felony with which Elliott was charged is punishable by imprisonment in the State prison "for life or any term of years."[*]

_____

[*] CL 1929, § 16748. By PA 1931, No 328, this was re-enacted into the penal code. See CL 1948, § 750.531 (Stat Ann 1954 Rev § 28.799). This act had been part of the statute law beginning with PA 1877, No 111.

Under that statute, was the life sentence, imposed in 1930, void because it did not fix a minimum term?

The Michigan code of criminal procedure, chapter 9, § 9, which since its enactment in 1927 (PA No 175) has constituted a part of our indeterminate sentence law (CL 1948, § 769.9 [Stat Ann 1954 Rev § 28.-1081]), provides:

"The provisions of this chapter, relative to indeterminate sentences, shall not apply to any person convicted of an offense, the only punishment for which prescribed by law is imprisonment for life: Provided, That in all cases where the maximum sentence in the discretion of the court may be for life or any number of years, the court imposing the sentence shall fix both the minimum and maximum sentence."

Similarly, the offense of second-degree murder, at least since 1846 (RS 1846, chapter 153), has been punishable "by imprisonment in the State prison for life, or any term of years, in the discretion of the court trying the same."

The indeterminate sentence law with which we are concerned first appeared in PA 1905, No 184, and was superseded by the code of criminal procedure, chapter 9, PA 1927, No 175.*

In 1909, this Court held:

"The indeterminate sentence law (PA 1905, No 184) is to be construed as amendatory and in harmony with the existing criminal statute; and, where respondent, under CL 1897, § 11471, was convicted of the crime of murder in the second degree and sentenced to imprisonment for life, the sentence was not invalid under the indeterminate sentence law, the court in its discretion having imposed a life sentence could not fix a maximum and minimum term." *People v. Vitali,* 156 Mich 370. (Syllabus.)

---

* CL 1948, § 769.1 *et seq.* (Stat Ann 1954 Rev § 28.1072 *et seq.*).— REPORTER.

In that case the Court said (pp 370–372):

"Respondent was tried, convicted, and sentenced under CL 1897, § 11471, which reads:

" 'All other kinds of murder shall be deemed murder of the second degree, and shall be punished by imprisonment in the State prison for life, or any term of years, in the discretion of the court trying the same.'

"Error is assigned upon this sentence as contrary to the provisions of PA 1905, No 184, § 3; it being claimed that it is void because it is a sentence for life, and it does not fix a maximum and minimum term of imprisonment.

"The act is known as the 'indeterminate sentence law.' * * *

"If the contention of respondent is correct, that a life sentence under CL 1897, § 11471, cannot be imposed, then section 3 of the indeterminate sentence law repeals the provision authorizing imprisonment for life contained in this section, and all other sections which authorize a sentence for life, or any term of years.

"This Court has already held: That the act of 1903, which the act under consideration repealed and superseded, was not intended to repeal any of the criminal statutes; that it was evidently intended and should be regarded rather as an amendment to the criminal statutes. *In re Lambrecht,* 137 Mich 450. An examination of our statutes discloses that the construction of respondent would repeal the extreme penalty of a similar punishment provided for by statutes for 13 distinct felonies, and would operate as a release of all so sentenced for crimes committed since this law went into effect. It cannot be presumed that the legislature in this enactment entertained any such intent. This statute is susceptible of another and a reasonable construction. As was intimated in *In re Lambrecht, supra,* it was intended to be construed in harmony with the existing criminal statutes. * * * There could be no minimum sentence in case the life sentence were given."

In the case of *In re Smith,* 212 Mich 78, the trial court imposed a life sentence and recommended a minimum period of 10 years and a maximum of 10 years as a reasonable maximum term. It was held that this was a life sentence and that the recommendation of 10 years was surplusage and void. The Court said (p 79):

"Under this section the sentence may, in the discretion of the trial judge, be for life or for any term of years. If the sentence be for life the indeterminate sentence law is not applicable. *People* v. *Vitali,* 156 Mich 370; *People* v. *Dumas,* 161 Mich 45; *People* v. *Blake,* 157 Mich 533."

We are in accord with the order of the court July 6, 1953, on the motion of the attorney general, nullifying the action which the court took December 3, 1952, and which "corrected" the life sentence and imposed another sentence for 30 to 40 years to begin June 30, 1930. The life sentence was legal and there was no occasion to "correct" it, as in *In re Allison,* 322 Mich 491, and *In re Weir,* 342 Mich 96. The action taken by the court December 3, 1952, was a nullity. *People* v. *Fox,* 312 Mich 577 (168 ALR 703). The life sentence imposed upon Elliott by the court June 13, 1930, is still valid and in effect.

In view of the foregoing conclusion, we need not consider the contention of counsel for the defendant department of corrections that the order entered by the court July 6, 1953, cannot be successfully attacked collaterally in a mandamus proceeding.

Writ denied.

CARR, C. J., and BUTZEL, SMITH, SHARPE, REID, DETHMERS, and KELLY, JJ., concurred.