*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAMARIUS MONTRAIL GREEN,

      Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No. 345852
Genesee Circuit Court
LC No. 17-041898-FC

ON REMAND

Before: SHAPIRO, P.J., and JANSEN and BORRELLO, JJ.

SHAPIRO, P.J. (*dissenting*).

I respectfully dissent and would remand for resentencing.

Only one crime in Michigan—first-degree murder—may be punished by a sentence of "imprisonment for life without eligibility for parole[.]" MCL 750.316(1). In this case, although defendant was *charged* with first-degree murder, he was *acquitted* of that charge by a jury and convicted of second-degree murder, MCL 750.317. "The statutory difference in the penalties provided for first-degree murder and second-degree murder are great." *People v Jenkins*, 395 Mich 440, 442; 236 NW2d 503 (1975), overruled on other grounds *People v Cornell*, 466 Mich 335; 646 NW2d 127 (2002). Specifically, "[a] person convicted of second-degree murder may be paroled." *Jenkins*, 395 Mich at 442. The statutory language denoting the punishment for second-degree murder has been in effect "at least since 1846[.]" *Elliott v Mich Dep't of Corrections*, 343 Mich 681, 689; 73 NW2d 298 (1955).

Having been convicted of second-degree murder, a defendant may be sentenced to "life, or any term of years," MCL 750.317, but cannot be denied the possibility of release through parole. See *Jenkins*, 395 Mich at 442. Defendant was 20 years old when he began serving his minimum 60-year sentence. Given the length of this sentence, defendant will not even be considered for parole until he is 80 years old. By contrast, an individual sentenced to life with the possibility of parole must be considered for parole after 15 years. MCL 791.234(8)(b). One need not be a legal scholar to observe that this dichotomy makes little sense, as it provides for a far earlier opportunity for parole for someone sentenced to life imprisonment than someone sentenced to a term of years.

-1-

Here, a life sentence would result in parole consideration 45 years earlier than what is available to this defendant.[1]

This has not always been the case. In 1989, in *People v Moore*, 432 Mich 311, 329; 439 NW2d 684 (1989), the Michigan Supreme Court held that "a term of years must be an indeterminate sentence less than life. It must be something that is reasonably possible for a defendant actually to serve." (quotation marks and citation omitted). The Court did not require that the trial court make an individualized estimate of a defendant's life expectancy, but did "direct the trial court to fashion a sentence that a defendant in his mid-to late-thirties has a reasonable prospect of actually serving." *Id*. See also *People v McNeal*, 156 Mich App 379, 381; 401 NW2d 650 (1986) ("[A] parolable life term is, as a matter of law, a lengthier sentence than any term of years[.]").

The *Moore* decision was, however, abrogated in *People v Lemons*, 454 Mich 234; 562 NW2d 447 (1997). In my view, the opinion in *Moore* and the partial dissent in *Lemons* have the far better of the argument, and I urge the Supreme Court to reconsider *Lemons*. A minimum term of years that cannot be reasonably expected to be servable within a defendant's lifetime is greater than a sentence of life with parole eligibility after 15 years, and improperly sidesteps the requirement that even those guilty of second-degree murder and sentenced to life are entitled to parole consideration within their lifetimes. As JUSTICE CAVANAGH noted in dissent, "a sentence fashioned for the sole purpose of depriving the parole board of its legislatively provided jurisdiction constitutes an abuse of a sentencing court's discretion." *Lemons*, 454 Mich at 261 (CAVANAGH, J., concurring in part and dissenting in part).

*Lemons* was decided in a very different context than exists today. In 1997, prisoners were eligible for disciplinary credits that would result in far earlier parole consideration.[2] The effect of

---

[1] It is worth noting that a prisoner, especially in a murder case, is by no means guaranteed release at their first parole review. Indeed, given defendant's maximum term, the Michigan Department of Corrections has the authority to imprison him for the rest of his life if it determines that he should not be released due to dangerousness or other reasons. And given that a life term or a *maximum* term of years beyond a reasonably expected lifespan (as was imposed here) would allow the parole board to do so, it is difficult to see any reason for a trial court to impose such a lengthy minimum term rather than a life sentence except to circumvent the requirement of parole consideration. Putting aside the fact that this is an end-run around the statutory scheme, it also effectively denies the executive branch, here, the Michigan Department of Corrections, to perform its function, i.e., to determine when a prisoner, not sentenced to life without parole, is fit for release.

[2] Beginning in 1857, Michigan "permitt[ed] the convicts to earn good time by good conduct[.]" *In re Walsh*, 87 Mich 466, 468; 49 NW 606 (1891).

Like most jurisdictions, Michigan historically granted generous amounts of "good time." Prisoners routinely had their minimum sentences reduced for good in-prison conduct, meaning an individual could serve a 40-year minimum in 16 years. Michigan ended good time by ballot initiative in 1978, then replaced it with disciplinary credits of up to seven days a month in 1982. However, in 1998, the state adopted its unique version of "truth in sentencing" that eliminated all sentence

disciplinary credit reductions should not be underestimated. When *Lemons* was decided, a prisoner sentenced to a 60-year minimum term, and who received the maximum disciplinary credits available to him, would be eligible for parole consideration after approximately 45 years. Levine, *Too Many Prisoners: Undoing the Legacy of Getting Too Tough*, 96 Mich B J 32, 34 (Sep 2017). In other words, even lengthy terms-of-year sentences provided defendants with parole consideration within their lifetimes. Today, the same prisoner, like defendant, would not eligible for parole consideration until he has served 60 years.

Granted, determining whether a particular defendant will live past his minimum term is not an exact science, and it likely asks too much of trial courts to consider the individual variations in health, sex, and race that affect life expectancy. Hence, the *Moore* Court concluded that the issue turns on the life expectancy of an average prisoner. This may not be a perfect standard, but it is workable, and minimizes the likelihood of a term of years exceeding a life sentence. According to an analysis of New York state parole data from 1989 to 2003, "Each additional year in prison produced a 15.6% increase in the odds of death for parolees, which translated to a 2-year decline in life expectancy for each year served in prison."[3] Whether these statistics are precisely accurate can certainly be challenged, but, even if the effect is only 25% of what the study found, a 20-year-old prisoner, like defendant, will lose a year of his life expectancy for every 2 years he spends in prison. Even assuming this more modest effect, it cannot be reasonably concluded that a 20-year-old will survive to age 80 in prison. In other words, defendant will never even be *considered* for parole.

When trial courts impose terms-of-years sentences that cannot be reasonably expected to be servable within the lifetime of a similarly-aged prisoner in average health, it amounts to a de facto life-without-parole sentence. More relevant to the Supreme Court's remand order, I would hold that when the sentencing court fails to consider this reality, the sentence does not adequately account for the circumstances of that particular defendant, as required by the principle of proportionality. See *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). In this case, defendant was sentenced to a minimum term of years that he cannot reasonably be expected to serve within his lifetime, i.e., the trial court imposed a de facto sentence of life without the possibility of parole. I would therefore conclude that the sentence is not proportional under *People v Posey*, 512 Mich 317, 360-361; 1 NW3d 101 (2023).

/s/ Douglas B. Shapiro

credit for offenses committed later. [Levine, *Too Many Prisoners Undoing the Legacy of Getting Too Tough*, 96 Mich. B J 32, 34 (Sep 2017).]

[3] Evelyn J. Patterson, *The Dose-Response of Time Served in Prison on Mortality: New York State, 1989-2003*, American Journal of Public Health (March 2013) <https://ajph.aphapublications.org/doi/full/10.2105/AJPH.2012.301148> (accessed March 11, 2024). As the Illinois Appellate Court noted: " 'The United States Sentencing Commission Preliminary Quarterly Data Report' (through June 30, 2012) indicates that a person held in a general prison population has a life expectancy of about 64 years. This estimate probably overstates the average life expectancy for minors committed to prison for lengthy terms." *People v Sanders*, 2016 IL App (1st) 121732-B; 56 NE3d 563, 571 (2016).